KENNETH BRITT *v.* WOODROW W. SEARS.

[No. 371A41. Filed December 29, 1971, Rehearing denied February 2, 1972. Transfer denied September 19, 1972.]

*F. Boyd Hovde, Townsend, Hovde & Townsend,* of counsel, of Indianapolis, for appellant.

*William O. Schreckengast, Edward E. Brown, Kitley, Schreckengast & Davis,* of Beech Grove, for appellees.

WHITE, J.—The sole question presented in this appeal is whether, as against a motion to dismiss, an action may be maintained by a father for the wrongful death of a stillborn child alleged to be "a full term healthy male capable of independent life" with which its mother "was . . . [at the time of its fatal injury] nine months and one week pregnant." The statute on which the action here involved is predicated is IC 1971, 34-1-1-8, Ind. Ann. Stat. § 2-217 (Burns 1967) which, in pertinent part, provides:

"A father . . . may maintain an action for the . . . death of a child . . . ."

The trial court dismissed the plaintiff's complaint under Trial Rule 12 (B) (6) for failure to state a claim upon which relief could be granted.[1] For the purposes of reviewing the trial court's ruling we must and do assume that the allegations in the plaintiff's complaint are true.[2]

The question of whether the complaint (in the words quoted in the first sentence hereof) describes a child within the meaning of the statute above quoted has not been answered by legislative enactment nor by prior reported decision of an Indiana state court.[3] Thus we have no rule by which to decide this appeal. But want of a law to follow furnishes no excuse for refusing to make a decision. When there is no rule to follow the court must make one, or, as some jurisprudents prefer, "discover" one.[4]

---

1. The complaint asserts two claims, Count I, the claim here involved and Count II, the husband's claim for loss of his wife's services, etc. Count I, only, was dismissed without making it a final judgment as provided in Trial Rule 54 (B). Appellee did not raise the question of the appealability of the ruling. After the question was called to the attention of counsel at oral argument a supplemental entry by the trial court pursuant to TR 54 (B) was duly certified to this court. Therefore, pursuant to AP 4 (B) (after Jan. 1, 1972, AP 4 (E)) we treat the dismissal of Count I as an appealable final judgment.

2. See 1 Harvey, INDIANA PRACTICE 605: Thus, we not only assume the truth of the facts descriptive of the stillborn child at the time of the fatal injury but also the conclusion that it was stillborn as the proximate result of defendant's negligence.

3. In *Schulty* v. *Stecy* (N.D. Ind. 1967), F. Supp., 11 Ind. Dec. 198, U.S. District Judge Beamer, anticipating that "Indiana courts would not allow recovery for the stillbirth of a child," dismissed an action by the father but suggested, without citing Indiana authority, that the mother could recover for her mental distress caused by the "loss of the child." Nothing was said of the parents' burial expense.

4. "Again, the function of a judge is not mainly to declare the Law, but to maintain the peace by deciding controversies. Suppose a question comes up which has never been decided, —and such questions are more frequent than persons not lawyers generally suppose, —the judge must decide the case somehow; he will properly wish to decide it not on whim, but on principle, and he lays down some rule which meets acceptance with the courts, and future cases are decided in the same way. That rule is the Law, and yet the rights and duties of the parties were not known and were not knowable by them. That is the way parties are treated and have to be treated by the courts; it is solemn juggling to say that the Law, undiscovered and undiscoverable, and which is finally determined in opposite ways in two communities separated only by an artificial

As judges usually do in like instances, we look to the decisions and opinions of courts in other common law jurisdictions. There we find many well reasoned opinions reaching opposite conclusions. At the present time it appears that questions almost identical to ours[5] have been answered by opinion published in twenty-four of the United States and the District of Columbia. In sixteen of those states, and in the District of Columbia, it has been held that an action lies. In eight states, it has been held that no action may be maintained.[6] This two-to-one majority is, in itself, quite impressive but not decisive.

The early reported cases in the United States dealt not with the question of wrongful death before birth but with

boundard, has existed in both communities from all eternity." Gray, THE NATURE AND SOURCES OF THE LAW, p. 110.

5. Not only do the statutes differ from state to state but the facts, particularly the period of gestation, differ from case to case.

6. The reported cases (by jurisdiction) which have allowed the action are: CONNECTICUT: *Hatala* v. *Markiewicz* (1966), 26 Conn. Supp. 358, 224 A. 2d 406; DELAWARE: *Worgan* v. *Greggo & Ferrara, Inc.* (1956), 50 Del. 258, 128 A. 2d 557; DISTRICT OF COLUMBIA: *Simmons* v. *Howard University* (D.D.C. 1971), 323 F. Supp. 529; GEORGIA: *Porter* v. *Lassiter* (1955), 91 Ga. App. 712, 87 S. E. 2d 100; IOWA: *Wendt* v. *Lillo* (1960, D.C. Iowa), 182 F. Supp. 56 (applying Iowa law); KANSAS: *Hale* v. *Manion* (1962), 189 Kan. 143, 368 P. 2d 1; KENTUCKY: *Mitchell* v. *Couch* (1955, Ky.), 285 S. W. 2d 901; LOUISIANA: *Valence* v. *Louisiana Power & Light Co.* (1951, La. App.), 50 So. 2d 847; MARYLAND: *State use of Odham* v. *Sherman* (1964), 234 Md. 179, 198 A. 2d 71; MICHIGAN: *O'Neill* v. *Morse* (Mich. 1971), 188 N. W. 2d 785; MINNESOTA: *Verkennes* v. *Corniea* (1949), 229 Minn. 365, 38 N. W. 2d 838, 10 ALR 2d 634; MISSISSIPPI: *Rainey* v. *Horn* (1954), 221 Miss. 269, 72 So. 2d 434; NEVADA: *White* v. *Yup* (Nev. 1969), 458 P. 2d 617; NEW HAMPSHIRE: *Poliquin* v. *MacDonald* (1957), 101 N.H. 104, 135 A. 2d 249; OHIO: *Stidam* v. *Ashmore* (1959), 109 Ohio App. 431, 11 Ohio Ops. 2d 383, 167 N. E. 2d 106; SOUTH CAROLINA: *Fowler* v. *Woodward* (1964), 244 S.C. 608, 138 S. E. 2d 42; WEST VIRGINIA: *Panagopoulous* v. *Martin* (D.C., W. Va. 1969), 295 F. Supp. 220; WISCONSIN: *Kwaterski* v. *State Farm Mutual Auto Ins. Co.* (1967), 34 Wis. 2d 14, 148 N. W. 2d 107.

Those cases which have denied it are: CALIFORNIA: *Norman* v. *Murphy* (1954), 124 Cal. App. 2d 95, 268 P. 2d 178; MASSACHUSETTS: *Keyes* v. *Constr. Service Inc.* (1960), 340 Mass. 633, 165 N. E. 2d 912; NEBRASKA: *Drabbels* v. *Skelly Oil Co.* (1951), 155 Neb. 17, 50 N. W. 2d 299; NEW JERSEY: *Graf* v. *Taggert* (1964), 43 N.J. 303, 204 A. 2d 140; NEW YORK: *Endresz* v. *Friedberg* (1969), 24 N.Y. 2d 478, 248 N. E. 2d 901; NORTH CAROLINA: *Gay* v. *Thompson* (1966), 266 N.C. 394, 146 S. E. 2d 425, 15 ALR 3d 983; OKLAHOMA: *Howell* v. *Rushing* (1953 Okla.), 261 P. 2d 217; PENNSYLVANIA: *Marko* v. *Philadelphia Transp. Co.* (1966), 420 Pa. 124, 216 A. 2d 502; TENNESSEE: *Hogan* v. *McDaniel* (1958), 204 Tenn. 235, 319 S. W. 2d 221.

pre-natal injury to a child thereafter born alive. The first such case is *Dietrich* v. *Northampton* (1884), 138 Mass. 14, 52 Am. R. 242, which iterated what is said to have been the common law belief that the unborn child is a part of the mother who is, therefore, the only "person" legally capable of sustaining injury.[7] That reasoning thereafter was the basis, and in some states continues to be the basis, for denying both that a pre-natally injured child, after its live birth, has a cause of action for such injuries and that there is any cause of action for its wrongful death, particularly if (as here) the death occurs before birth. Some states have since found reasons for allowing the live-born child to maintain an action for damages for pre-natal injuries, while still denying to anyone a cause of action for a child's pre-natal wrongful death.[8]

In the first reported cases in the United States to decide the question of whether an action may be maintained for the wrongful pre-natal death of a child, *Verkennes* v. *Corniea* (1949), 229 Minn. 365, 38 N. W. 2d 838, 839, 10 A. L. R. 2d 634, 638, the court rejected the basic premise of *Dietrich* that "the unborn child was a part of the mother." Instead it quoted with approval a part of the following words from the dissent by Mr. Justice Boggs in *Allaire* v. *St. Luke's Hospital* (1900), 184 Ill. 359, 370, 56 N. E. 638, 641, 48 L. R. A. 255 (in which the majority had denied a live-born child the right to maintain an action for pre-natal injuries), as follows:

"A foetus in the womb of the mother may well be regarded as but a part of the bowels of the mother during a portion

---

7. Note, The Law and the Unborn Child, 46 NOTRE DAME LAWYER 349, 354 (1971). "[A] more accurate statement, according to Salmond, Torts, 346 (10th Ed., Stallybrass, 1945), would have been that there was no English authority on either side of the question." *Amann* v. *Faidy* (1953), 415 Ill. 422, 114 N. E. 2d 412, 416.

8. Among those states are California (*Scott* v. *McPheeters* [1939] 33 Cal. App. 2d 629, 92 P. 2d 678, 682), New Jersey (*Graf* v. *Taggert* [1964], 43 N.J. 303, 204 A. 2d 140), North Carolina (*Gay* v. *Thompson* [1966], 266 N.C. 394, 146 S. E. 2d 425, 15 A. L. R. 3d 983), and New York (*Endresz* v. *Friedberg* [1969], 24 N.Y. 2d 478, 248 N. E. 2d 901). See also 2 Harper and James, THE LAW OF TORTS, § 18.3, p. 1031.

of the period of gestation; but if, while in the womb, it reaches that prenatal age of viability when the destruction of the life of the mother does not necessarily end its existence also, and when, if separated prematurely, and by artificial means, from the mother, it would be so far a matured human being as that it would live and grow, mentally and physically, as other children generally, it is but to deny a palpable fact to argue there is but one life, and that the life of the mother. Medical science and skill and experience have demonstrated that at a period of gestation in advance of the period of parturition, the foetus is capable of independent and separate life, and that, though within the body of the mother, it is not merely a part of her body, for her body may die in all of its parts and the child remain alive, and capable of maintaining life, when separated from the dead body of the mother. If at that period a child so advanced is injured in its limbs or members, and is born into the living world suffering from the effects of the injury, it is not sacrificing truth to a mere theoretical abstraction to say the injury was not to the child, but wholly to the mother?" (56 N. E. at 641).[9]

The *Verkennes* opinion concluded:

"It seems too plain for argument that where independent existence is possible and life is destroyed through a wrongful act a cause of action arises under the statutes cited." (38 N. W. 2d at 841).

But mere recognition of an unborn child's independent existence at the time of injury, is not everywhere sufficient to give rise to a cause of action for its wrongful death unless the child is born before it dies. Several states which permit a living child to maintain an action for a tortious injury suffered before a birth, deny its administrator, parent, or next of kin the right to maintain either a wrongful death

9. The rationale of the Boggs dissent was adopted by the Supreme Court of Illinois a half century later in the decision of *Amann* v. *Faidy* (1953), 415 Ill. 422, 114 N. E. 2d 412, 418. This later case held that an action would lie for the wrongful death from a prenatal injury of child born alive. We have found no reported Illinois case involving an action for wrongful death before birth.

action[10] ·or a survival action[11] based on a pre-natal injury unless the child is first born alive. Sometimes the obstacle is wording peculiar to that state's wrongful death or survival statute as in California where a statute authorized an action for the death of a "minor person", defined as a person under 21 years of age, with age required to "be calculated from the first minute of the day on which persons are born . . . ." In *Norman* v. *Murphy* (1954), 124 Cal. App. 2d 95, 268 P. 2d 178, 181, the court said ". . . even if . . . an unborn, viable child is 'a person' within the meaning of our law, it could not be held to be ' a minor person'." In some cases it is held that there is no provable pecuniary loss.[12] Or "proof of pecuniary injury and causation is immeasurably more vague than in suits for pre-natal injuries."[13] These reasons are often coupled with the assertion that compensation for the loss of the stillborn infant is provided in the mother's action for her own injuries in which she can recover for her own suffering[14] and emotional upset[15] occasioned by the still-birth and that the mother's husband in his action for his losses occasioned by her injury may recover medical and interment expenses occasioned by the stillbirth.[16] All of these reasons (and others we have not mentioned) lead some to the conclusion that "[t]he considerations of justice which mandate the recovery of damages by an infant, injured in his mother's womb and born deformed through the wrong of a third party, are absent where the foetus, deprived of life

---

10. By "wrongful death action" we mean an action authorized by some form of so-called Lord's Campbell's Act.

11. By "survival action" we mean an action for personal injuries which, by statute, survives the death of the injured person.

12. *Graf* v. *Taggert* (1964), 43 N.J. 303, 204 A. 2d 140, 144; *Gay* v. *Thompson* (1966), 266 N.C. 394, 146 S. E. 2d 425, 428, 15 A. L. R. 3d 983; see also 2 Harper and James, THE LAW OF TORTS § 18.3, p. 1031.

13. *Endresz* v. *Friedburg* (1969), 24 N.Y. 2d 478, 248 N. E. 2d 901, 903.

14. Id.

15. *Graf* v. *Taggert, supra,* n. 12.

16. *Endresz* v. *Friedburg, supra,* n. 14.

while yet unborn, is never faced with the prospect of impaired mental or physical health."[17] And, of course, that familiar self-justification of our sense of oughtness which is so often relied on by judges and lawyers, i.e., legislative intent, is not forgotten.[18]

We fully recognize that any action to recover damages for a wrongfully caused death is purely a creature of statute[19] and concede, *arguendo*, that the Legislature has the power and right to create a cause of action in the father for the wrongful death of his children born alive while withholding that right as to children stillborn.[20] But we find no objective reason for saying that the 1881 Legislature which gave the father the right to "maintain an action for the injury or death of a child" did not intend "child" to include a stillborn child. Whatever was in their minds is not recorded and is, at best, a matter of mere supposition. But if we may, *arguendo*, indulge in our own supposition it would be this: That since actions for pre-natal injuries and deaths were then unknown in Indiana jurisprudence[21] our lawmakers very probably gave no thought to whether they were creating an action for prenatal injury or pre-natal death, or whether their word "child" was the same word "child" so often used in referring to a pregnant woman is being "with child".[22]

17. Id.

18. Id.

19. *In re Estate of Pickens* (Ind. 1970), 263 N. E. 2d 151, 155, 23 Ind. Dec. 263; *Northern Ind. Power Co.* v. *West* (1941), 218 Ind. 321, 32 N. E. 2d 713, 716.

20. Superficially, at least, the United States Supreme Court's decisions under the Equal Protection Clause with respect to illegitimate children cast some doubt on the constitutionality of excluding unborn and stillborn children. *Levy* v. *Louisiana* (1968), 391 U. S. 68; *Glona* v. *American Guarantee Co.* (1968), 391 U. S. 73; *Labine* v. *Vincent* (1971), 401 U. S. 532, 91 S. Ct. 1017. See also *Reed* v. *Reed* (Nov. 22, 1971), 404 U. S. 71, 92 S. Ct. 251 (sexual discrimination).

21. At least none had found its way into reports of the courts of appellate jurisdiction.

22. "Behold, a virgin shall be with child, and shall bring forth a son. . . ." Matthew 1:23 (King James version). Webster's New Int. Dict., 2nd Ed., Child 1.

More helpful than speculation on the intent of 1881 legislators is consideration of the many instances in which, for other purposes, the law has recognized the unborn child as a person.

As to the early common law we are directed to this statement in 1 Blackstone COMMENTARIES 129:

> "Life is the immediate gift of God, a right inherent by nature in every individual; and it begins in contemplation of law as soon as an infant is able to stir in the mother's womb. For if a woman is quick with child, and by a potion or otherwise killeth it in her womb; or if any one beat her whereby the child dieth in her body, and she is delivered of a dead child; this though not murder was by the ancient law homicide or manslaughter . . . An infant in [sic] ventre sa mere, or in the mother's womb, is supposed in law to be born for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were then actually born. And in this point the Civil law agrees with ours."

Indiana has followed the common law in according property and inheritance rights to unborn children. *Biggs* v. *McCarty* (1882), 86 Ind. 352; *Swain* v. *Bowers* (1927), 91 Ind. App. 307, 158 N. E. 598.

Indiana statutes have also recognized the unborn infant as a child. The second of our 1905 anti-abortion statutes, Ind. Ann. Stat. § 10-106 (Burns 1956) includes the proviso, "except when done by a physician for the purpose of saving the life of mother or child."

The "Public Health Code of Indiana"[23] defines "stillbirth" as meaning "a birth after 20 weeks of gestation which is not a live birth."[24] ("Live birth" is defined as "the birth of a child who shows evidence of life after the child is entirely outside the mother.")[25] "The person in charge of interment

---

23. Ind. Ann. Stat. § 35-101 *et seq.*
24. Ind. Ann. Stat. § 35-1702, Cl. 3 (Burns (1969).
25. Id. § 35-1702, Cl. 2.

[i.e., a licensed funeral director[26]] shall file a certificate of death or of stillbirth with the local health officer."[27] The funeral director is required to obtain the data for the certificate and present it to the physician "who shall certify the cause of death upon the certificate of death or of stillbirth."[28] "If the death or stillbirth occurred without medical attendance . . . the local health officer shall inquire . . . and certify the cause of death . . .".[29] "If the circumstances suggest that the death was caused by other than natural causes . . ." the case shall be referred to the coroner for investigation.[30] "Upon receipt of a properly executed certificate of death or of a stillbirth . . . a local health officer . . . shall issue a permit for the disposal of the body."[31] The funeral director "shall secure a permit . . . prior to any disposition of the body."[32]

The foregoing statutes clearly indicate that with respect to health regulations concerning deaths a stillbirth is treated exactly the same as any death of any human being (even to requiring a coroner's investigation in suspicious cases). Although the express definition of "Dead body" in the Health Code is vague with respect to whether it includes a stillborn body, the whole tenor of the act indicates that it does. The requirement of § 35-1908 that "[t]he person in charge of

26. Since Ind. Ann. Stat. § 21-1001 (Burns 1971), the definition section of the Indiana General Cemetery Act (§§ 21-1001—21-1030), defines interment as "any lawful disposition of the remains of a deceased person" and Ind. Ann. Stat. § 63-722 (Burns 1971), being § 6 of the 1939 Embalmers and Funeral Directors Act, as amended, (IC 1971, 25-15-1-1 et seq.), provides:

"Dead human bodies shall not be in any way prepared for burial except in an approved embalming room by a person so licensed to do embalming in this state; and no permit for the burial of a dead human body shall be issued by any health officer in this state to any person other than to a duly licensed funeral director, holding a license hereunder."

It is obvious that "the person in charge of interment" must be a licensed funeral director.

27. Ind. Ann. Stat. § 35-1901 (Burns 1969).
28. Id. §§ 35-1902, 35-1903.
29. Ind. Ann. Stat. § 35-1904 (Burns 1971).
30. Ind. Ann. Stat. § 35-1905 (Burns 1969).
31. Id. § 35-1907.
32. Id. § 35-1908.

interment shall secure a permit prior to any disposition of the body . . . ." clearly requires a burial permit for the disposition of stillborn bodies as well as those which have died after birth. Which means that neither type of body can be disposed of except as permitted by the Indiana General Cemetery Act[33] defining interment as "any lawful disposition of the remains of a deceased person as provided by [§ 21-1019]. . . ." § 21-1019 (Burns 1971) provides:

> "Subject to the rights of transportation and removal of dead human bodies, or other disposition of such bodies, as provided by law, the remains of all deceased persons dying in the state of Indiana . . . shall be deposited in the earth, in an established cemetery, in a mausoleum or in a columbarium . . . . The remains of such bodies that shall have been cremated may be deposited in mausoleums or columbaria or deposited in the earth . . . ."

Short of donating the body for purposes specified in the Uniform Anatomical Gift Act, Ind. Ann. Stat. § 35-4801 *et seq.*,[34] there is no way that a stillborn today may be disposed of legally except by interment. Which means not only that it is treated as the body of any other child who has died, but also that the parents of a child negligently killed one day before birth have "burial" expenses just as though it were killed one day after birth.

Having carefully considered the arguments *pro* and *con*, as made by the parties and as stated in the cases cited, we concluded that it is both just and logical to treat an unborn child who has been 280 days in gestation as having a legal being and legal personality distinct from that of its mother although it is enclosed in its mother's body and therefore dependent upon her breath for oxygen and upon her food for nourishment. Whether any and every child who has been in gestation that period of time would live if artifi-

---

33. Ind. Ann. Stat. § 21-1001 *et seq.* (Burns 1964 and 1971).

34. Ind. Ann. Stat. § 35-4801 (b) (Burns 1971), the definition section of the anatomical gift act, § 35-4801 (b), defines "decedent" as being a "deceased individual and includes a stillborn infant or fetus."

cially delivered (without untoward injury being incurred in delivery) we do not profess to know and need not know to decide this case. The complaint here alleges that the child was capable of independent life. Furthermore, it is common knowledge that most children who live are children who have been delivered at or quite close to this point in the chronology of their gestation.[35] We see no basis for holding that the plaintiff here did not lose a child merely because of the fortuitous circumstance that its period of gestation had continued a little longer than is the case with many other children who live a normal life.

We therefore hold that "a full term healthy male capable of independent life" with which its mother, at the time of its death in her womb, "was then nine months and one week pregnant" is a "child" within the meaning of the statute which provides that "[a] father . . . may maintain an action for the . . . death of a child. . . ."[36]

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.

Sharp and Staton, JJ., concur.

Hoffman, C. J., dissents with opinion.

### Dissenting Opinion

HOFFMAN, C. J.—I dissent from the majority opinion. We are here concerned with a question of first impression in Indiana—whether a father may maintain a wrongful death action for the stillbirth of a once-viable fetus, such stillbirth resulting from defendant's negligence.

The majority opinion first turns to a learned discussion of the development of authority from other jurisdictions, prop-

---

35. "Some authorities consider normal human gestation to last not 280 days but rather 260 to 265 days. Lee-Greenhill, Principles & Practice of Obstetrics (8th Edition 1943), page 8." *Beaman* v. *Hedrick* (1970), 146 Ind. App. 404, 255 N. E. 2d 828, 830, n. 1.

36. IC 1971, 34-1-1-8, also Ind. Ann. Stat. § 2-217 (Burns 1967).

erly recognizing the division of that authority to be at least partially due to the statutory peculiarities of the various jurisdictions. The majority opinion points out that twenty-four jurisdictions have spoken on whether to allow, or not allow, the father's cause of action for wrongful death. The views of these jurisdictions are readily divisible into a numerical majority and minority. Yet, even among the majority of jurisdictions that allow such cause of action, there are numerous and varying points of view. In light of this division of authority, this court, making the first pronouncement of this issue in this jurisdiction, must aim its discern point-blank at the most rational and equitable resolution of this issue under Indiana statutes and case law.

The majority opinion points out that unborn children are accorded certain property and inheritance rights. Where the child is conceived at the time of the decedent's death, it is considered in being as of the time of conception. However, in Indiana, as well as other jurisdictions, this right is conditioned on the fact that the child be born alive. In *Swain* v. *Bowers* (1927), 91 Ind. App. 307, at 316, 158 N. E. 598, at 601, (transfer denied), this court held:

> "It is a well-established rule of law that an infant is in being from the time of conception for the purpose of taking any estate which is for its benefit, whether by devise or under the statute of descent, provided it be born alive, and after such a period of foetal [fetal] existence that its continuance in life might be reasonably expected." (Citing authorities.)

In view of the condition that the infant "be born alive" and so far matured in its fetal existence as to be capable of living, after-born child statutes and pretermitted heir statutes lend little, if any, support for the proposition that unborn fetus is a "child."

Indiana statutes expressly distinguish between death and stillbirth. IC 1971, 16-1-17-1, Ind. Ann. Stat. § 35-1901 (Burns 1969) provides, "[t]he person in charge of interment shall

file a certificate of *death or of stillbirth* with the local health officer * * *." (Emphasis supplied.) Similarly, IC 1971, 16-1-17-7, Ind. Ann. Stat. § 35-1907 (Burns 1969), provides, "[u]pon receipt of a properly executed certificate of *death or of a stillbirth* * * * a local health officer * * * shall issue a permit for the disposal of the body." (Emphasis supplied.) Obviously, these statutes intend that a stillbirth and death be treated in the same manner as to recordation and disposal of the body. The statutes, however, do not say, nor are they meant to say, that a death of a once-living human being is equivalent to a stillbirth.

It is true that a stillbirth is, in substance, a "dead body." It is also true that a fetus conceived in the mother's womb is, after the passage of time, capable of being separated from the mother's body and carrying on life on its own. The perplexing question, however, is whether a wrongful death action may be maintained by the wife's husband for the death of the yet-unborn "child."

If such a cause of action is held to exist, it must exist under IC 1971, 34-1-1-8, Ind. Ann. Stat. § 2-217 (Burns 1967), which provides, in pertinent part, as follows:

> "Action for injury or death of child.—A father, or in case of his death, or desertion of his family, or imprisonment, the mother, or in case of divorce the person to whom custody of the child was awarded, may maintain an action for the injury or death of a child; * * *."

Prior Indiana decisions construing this statute have held that actions for wrongful death of a child and actions for wrongful death of adults are separate and distinct and the statutory provisions relating to each should be independently construed.

*Louisville, New Albany and Chicago R'y. Co.* v. *Goodykoontz, Guardian* (1889), 119 Ind. 111, 21 N. E. 472; *Hahn, et al.* v. *Moore* (1956), 127 Ind. App. 149, 133 N. E. 2d 900, (transfer denied) ; *Mayhew* v. *Burns* (1885), 103 Ind. 328, 2 N. E. 793.

The action of the father for the wrongful death of a child is based solely on the loss of the father's *property right* in the fruits of the child's services.

*Thompson* v. *Town of Fort Branch* (1931), 204 Ind. 152, 178 N. E. 440, 82 A. L. R. 1413; *Hahn, et al.* v. *Moore, supra.*

Where the "child" is unborn, this property right is not only infinitely speculative but, in fact, non-existent, vesting only with the birth of a living, self-sustaining child.

This jurisdiction has long held that in an action to recover for the death of his child, the father's measure of damages is the pecuniary value of the services the child would have rendered until he reached majority, less the cost of his support and maintenance.

*Hahn, et al.* v. *Moore, supra; Thompson* v. *Town of Fort Branch, supra; Siebeking, et al.* v. *Ford, Admx., etc.* (1958), 128 Ind. App. 475, 148 N. E. 2d 194 (transfer denied).

At first blush, this measure of damages seems outmoded even when applied to the death of a living child. The time has long since past that families depended on their childrens' labors to help provide their means of life. Now the costs of schooling, clothes, medical and dental care, housing, food and last, but not least, college tuitions and expenses far outweigh the child's contribution to the family income. Be that as it may, this writer does not propose to invade the legislative realm of changing this long-standing policy. It will here suffice to say that if this measure of damages is applied to the death of an unborn "child" the result would rest on no more than mere supposition. When the infant is still encased within its mother's womb mortal man is incapable of knowing if the "child" will survive the ordeal of birth, not to mention the impossibility of trying to assign a pecuniary value to the services the child might have provided had he been born alive.

In *Schulty* v. *Stecy* (D. C., N. D. Ind. 1967), 11 Ind. Dec.

198, Judge Beamer directly addressed the issue with which we are here concerned as follows:

> "Although there are strong reasons for allowing recovery by an infant who receives prenatal injuries but is subsequently born alive, it does not necessarily follow that an action should be had for the stillbirth of a child.
>
> "Indiana provides a special action for the death of a child. The statute provides: 'A father . . . may maintain an action for the injury or death of a child . . . .' Burns' Ind. Stat. Ann., Sec. 2-217. This recovery is limited to medical expenses for the care of the child and loss of income which the parents could have received during the child's minority, less the cost of support and maintenance during that period. [Citing authorities.]
>
> "In the case of a stillborn child there are no medical expenses of the child besides those of a mother. The value of the child's services less the cost of support during his minority is so speculative as to be beyond determination. This court therefore believes that Indiana courts would not allow recovery for the stillbirth of a child.
>
> "This will not necessarily preclude all recovery for the loss of the child. The Restatement of Torts, Section 869 states, '(I)n an action by the mother for a tort which has caused her physical harm, damages can be included for the pain, suffering and mental distress caused by the death of the child before birth or immediately afterwards.' "

Where an infant, having received prenatal injuries, is subsequently born alive, it may recover for those injuries through its guardian or next friend. Recovery is had by the person to whom the damage accrued. Where a minor child is killed, recovery of the father's lost property right is accorded by statute. Yet, to allow an expectant father to recover for the death of a stillborn "child" is to open the courtroom doors to boundless uncertainty of damages and the impossibility of determining when the "child" becomes viable for on this point even medical experts disagree.

The mother's pain and suffering and other actual injuries are recoverable in the mother's personal injury action against the tortfeasor. The hospital and doctor care, incidental medi-

cal expenses, loss of consortium, the infant's funeral expenses and other damages actually incurred are recoverable in the husband's action for damages. Thus, in accordance with general principles of equity the husband and wife have been made whole as to the damages actually suffered.

For the foregoing reasons I believe that equity demands that the judgment of the trial court should be affirmed.

NOTE.—Reported in 277 N. E. 2d 20.