Luis E. ESPADERO and Mario Jorge Pieroni, Plaintiffs,

v.

Jerry FELD, individually and d/b/a 404 Club, Defendant.

Jerry FELD d/b/a Club 404, Third-Party Plaintiff,

v.

KARL R. HANSEN INSURANCE AGENCY, Karl Hansen, individually, and Mid-America Preferred Insurance Company, a Missouri corporation authorized to do business in Colorado.

No. Civ. A. 85-C-248.

United States District Court, D. Colorado.

Nunc Pro Tunc Nov. 14, 1986.

Decided Dec. 23, 1986.

Charles S. Vigil, David C. Vigil, Denver, Colo., for plaintiffs.

Bernard H. Thorn, Mellman & Thorn, P.C., Denver, Colo., for defendant.

Harland G. Balaban, Balaban & Levinson, Denver, Colo., for Karl R. Hansen Ins. Agency and K. Hansen.

Jack D. Henderson, Henderson & Streelman, P.C., Denver, Colo., for Mid-America Preferred Ins. Co.

## ORDER

CARRIGAN, District Judge.

Plaintiffs Luis E. Espadero and Mario Jorge Pieroni filed this action against the defendant Jerry Feld, individually and doing business as the 404 Club, alleging negligence resulting in personal injury and death. Plaintiff Espadero suffered serious injury when a van he was driving was struck by an automobile driven by a drunk driver, Donald P. Brown. Plaintiff Pieroni's wife, Alejandra Beatrix Pieroni, was a passenger in the Espadero van, and was killed in the collision. At the time of her death she was nine months pregnant, and her full-term unborn male son also was killed in the crash. Plaintiffs allege that immediately prior to the accident, the defendant negligently served alcoholic drinks to Brown when he was visibly and severely intoxicated.

Defendant has moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss certain portions of the plaintiffs' complaint for failure to state a claim, or, in the alternative, for partial summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs have opposed the motion. All issues have been thoroughly briefed and oral argument has been heard. I am filing this memorandum opinion to explicate the reasons for my order issued orally from the bench at the hearing. Jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332(a)(2), and Colorado substantive law governs.

### I. Negligence Per Se as a Separate Claim.

Plaintiffs allege common law negligence in their first and fifth claims for relief. They further allege, in their second and sixth claims for relief, that the defendant is liable on a theory of negligence *per se* because he allegedly violated C.R.S. § 12–47–128(1)(a), a penal statute prohibiting the sale of alcoholic beverages to a visibly intoxicated patron.

■ Defendant contends that alleging violation of a penal statute does not state a separate claim for relief. Defendant's position is that proof of such violation at trial would not establish a claim separate from the negligence claim, but merely would constitute additional evidence in support of that claim. Plaintiffs argue that, perhaps from an abundance of caution, this matter was pleaded as a separate claim to be sure adequate notice was given. In my view, the defendant is correct and no separate claim need be pleaded to justify admitting the evidence in question. *Crespin v. Largo Corp.*, 698 P.2d 826 (Colo.App.1984), (held recovery of damages under C.R.S. § 12–47–128(1)(a) not permitted; but violation of that statute may be introduced as evidence of negligence). *See also, Hull v. Rund,* 150 Colo. 425, 374 P.2d 351 (1962); *Bartley v. Floyd & Skip Liquors,* 695 P.2d 781 (Colo.App.1984). It follows that the plaintiffs Espadero and Pieroni may assert negligence *per se* but only as additional evidence, or an additional theory in support of their common law negligence claims, not as an additional claim.

Since the plaintiffs' second and sixth claims fail to state claims for relief, they must be dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(6).

### II. Written Notice Pursuant to C.R.S. § 13–21–103.

Defendant next argues that liability under C.R.S. § 13–21–103, Colorado's "dram shop" statute, is conditioned on proof of written notice to the liquor establishment that a particular person is a habitual drunkard and should not be served alcohol. The cited statute reads in pertinent part as follows:

"Every husband, wife, child, parent, guardian, employer, *or other person* who is injured in person, or property, or means of support by any intoxicated person, or in consequence of the intoxication of any person, has a right of action, in his name, against any person who, by selling or giving away intoxicating liquors to any habitual drunkard, causes the intoxication, in whole or in part, of such habitual drunkard; ... No liability shall accrue against any such person as provided unless the husband, wife, child, parent, guardian, or employer first, by written or printed notice, has notified such person, or his agents, or employees not to sell or give away any intoxicating liquors to any habitual drunkard." (emphasis added).

It seems clear from the statute that the class of persons from whom notice is required does not include the plaintiffs. The only words that possibly might cover them are "or other person." But if the General Assembly had intended to require notice from all possible claimants, there would have been no need to list, "husband, wife, child, parent, guardian, employer...." Obviously "or other person" must be intended to describe others within the familial or employment relationships described. That interpretation might provide some rational foundation for the statute because such persons would be likely to know the drunken defendant's proclivities in advance of the event causing injury and if they knew where he got drunk regularly before driving, such a duty might rationally be imposed on them. Only if thus limited does the statute have any possible basis in reason.

■ On the other hand, the statutory construction sought by the defendant would produce the anomolous result of requiring the plaintiffs to notify the defendant of facts unknown to the plaintiffs, *i.e.,* Brown's drunkeness and the place where he got drunk, prior to their tragic, unforeseen meeting with him on February 5,

1983. Defendants do not claim that the plaintiffs had previous knowledge of Brown's drinking habits. It is inconceivable that the Colorado General Assembly intended to limit a right of recovery under C.R.S. § 13–21–103 to only those victims of a drunk driver who had a personal or employment relationship with him before he injured them.

Plaintiffs adequately state claims for relief in their fourth and eighth claims, and to the extent that the defendant seeks summary judgment on these claims, it is denied.

### III. Net Pecuniary Loss Under the Wrongful Death Statute.

Plaintiffs' fifth, sixth, seventh and eighth claims for relief are premised on C.R.S. § 13–21–202, the Colorado Wrongful Death Statute. Each of these claims contains a prayer for damages in excess of net pecuniary loss.

■ Damages in a wrongful death action are limited by C.R.S. § 13–21–202 to compensatory damages, and Colorado courts repeatedly have restricted the remedy to net pecuniary loss. *See, e.g., Espinoza v. O'Dell*, 633 P.2d 455 (Colo.1981). Exemplary or punitive damages are not recoverable in Colorado wrongful death actions. *Mangus v. Miller*, 35 Colo.App. 335, 535 P.2d 219, *cert. dismissed* 189 Colo. 481, 569 P.2d 1390 (1975). Nor does the statute permit recovery of general damages for grief or loss of comfort and society. *Niven v. Falkenburg*, 553 F.Supp. 1021 (D.Colo. 1983); *Jones v. Hildebrant*, 191 Colo. 1, 550 P.2d 339 (1976) *cert. denied*, 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977). While a case might well be made that neither the statute nor its history justifies the narrow remedies so far accorded by Colorado case law, I am bound to follow the law declared by the state supreme court, and any changes must be sought in that forum.

Plaintiffs' prayer for relief under the wrongful death statute for damages beyond their net pecuniary losses is stricken.

### IV. Wrongful Death of Unborn Viable Fetus.

Plaintiff Pieroni seeks damages pursuant to the Colorado Wrongful Death Statute for the wrongful death of his full-term, unborn son. Defendant argues that no recovery may be had under the statute for the wrongful death of a viable fetus. This issue has not been addressed by the Colorado courts or General Assembly. Defendant contends, however, that the legislature, and the courts by interpreting the statute as limiting recovery to net pecuniary loss, did not "contemplate" recovery for the unborn.

Defendants use of the word "contemplate" rather than "intend" is revealingly precise. In the late 1800's when the wrongful death statute was adopted in Colorado, actions for prenatal injuries and deaths were unknown. Legislators likely gave no thought to whether they were creating an action for prenatal death or whether the word "person" as used in the statute included a fetus at various stages of development.[1] *See Britt v. Sears*, 150 Ind.App. 487, 277 N.E.2d 20 (1971).

Thus it is appropriate to consider the broad, general intent and purpose of the General Assembly in enacting the wrongful death statute, including the goal of deterring those who might, negligently or purposefully, take human life. To preclude the plaintiff Pieroni from maintaining an action for the wrongful death of his unborn son would frustrate the legislature's intent to preserve and protect human life. As stated by the Alabama Supreme Court:

> "[T]o allow recovery where the fetus is stillborn is essential to the effectuation of legislative intent.... The paramount purpose of our wrongful death statute

1. *See also*, Annot., *Action for Death of Unborn Child*, 84 ALR 3d 411, 418 (1978) ("[I]t appears reasonable to assume that when wrongful death statutes have been enacted, legislators have generally given no thought to whether deaths of unborn children were intended to be included or excluded, and it is thus inappropriate to regard the issue as simply one of legislative intent.")

... is the preservation of human life.... To deny recovery would sanction the tortfeasor's wrongful act and would clearly negate the primary objective of the statute." *Eich v. Town of Gulf Shores,* 293 Ala. 95, 300 So.2d 354, 356 (1974).

In addition, denying recovery would produce illogical and inequitable results. For example, to deny recovery where the injury is so severe as to cause the death of a viable fetus, while allowing recovery where less severe injury to the fetus during pregnancy causes the baby's death after a live birth, would reward the tortfeasor for employing greater violence. *See Presley v. Newport Hospital,* 117 R.I. 177, 365 A.2d 748 (R.I.1976).

"It would be bizarre to hold that the greater the harm inflicted, the better the opportunity for exoneration of the defendant. Logic, fairness and justice compel our recognition of an action, as here, for prenatal injuries causing death before a live birth." *Eich v. Town of Gulf Shores,* 293 Ala. 95, 300 So.2d 354, 355 (1974).

There is no rational justification for applying to a baby's death immediately before birth a rule different from that which applies if the death occurs immediately after birth. *Presley v. Newport Hospital,* 117 R.I. 177, 365 A.2d 748 (R.I.1976). To the same effect is *Todd v. Sandidge Construction Co.,* 341 F.2d 75 (4th Cir.1964). There the tortious killing of an eight month old fetus caused by injury to its mother was held to give rise to a claim for relief under the South Carolina Wrongful Death Act. The court stated:

"To balance the right of action upon whether the child, fatally injured by the negligence of another, is born dead or alive seems not only an artificial demarcation but unjust as well. To illustrate, if the trauma is severe enough to kill the child then there could be no recovery; but if less serious, allowing the child to survive, there might be recovery. Again, if the fatality was immediate, the suit could not prevail, but if the death was protracted by a few hours, even minutes, beyond birth the claim could succeed.

Practically, it would mean that the graver the harm the better the chance of immunity. Moreover, it allows the act of the tortfeasor to foreclose his own liability—the life of the action would be in his hands. [T]hose deprived of their own by death should not also be deprived of all recompense by the death." *Id.* at 76–77.

Indeed, the modern trend and weight of authority both favor recognizing the right to maintain an action for the wrongful death of a viable fetus. *Werling v. Sandy,* 17 Ohio St.3d 45, 476 N.E.2d 1053, 1056 (Ohio 1985). At least twenty-five jurisdictions allow a wrongful death action for the death of a viable fetus. Only nine states preclude such an action. Indiana is apparently the only jurisdiction that requires that an unborn child be full-term before its tortious killing can give rise to a wrongful death action. *See* Annot., *Action for Death of Unborn Child,* 84 ALR 3d 411 (1978).

I hold that a wrongful death action may be maintained under Colorado law for the death of a viable fetus, particularly a full-term fetus. A full-term, viable unborn child's right to be born alive is entitled to as much protection under the Colorado Wrongful Death Statute as a newborn child's right to live. If, as the result of tortious injury to a mother bearing viable twins, one were born alive with fatal injuries caused by the tortfeasor, but the other was killed before birth, the law should recognize a tort remedy for each death. To the extent that modern medical developments have established that a fetus, once it has attained a certain stage of development is able to survive outside the mother's womb, reasoning based on contrary medical views of earlier times is no longer relevant.

Defendant argues that the Colorado law limiting recoveries in wrongful death actions to pecuniary or compensatory damages precludes the plaintiff Pieroni from maintaining an action for wrongful death of his unborn son since damages would be too speculative or remote. This argument confuses existence of a tort claim with

problems of proving damages. In Colorado, courts have recognized the right of a parent to maintain an action for the wrongful death of an infant, minor or child. *See, e.g., Pollock v. City and County of Denver,* 194 Colo. 380, 572 P.2d 828 (Colo.1977). The differences, if any, in proving damages for the loss of a newborn child, as compared to the loss of a viable unborn fetus, cannot be so great as to justify recognizing the claim in the former situation and denying it in the latter. Difficulties in proof of damages are not grounds for extinguishing a parent's right to assert the claim.

Courts in jurisdictions following the pecuniary loss rule have not only allowed plaintiffs to maintain such actions, but have awarded damages. In *O'Neill v. Morse,* 385 Mich. 130, 188 N.W.2d 785 (1971), the court held that an action for the wrongful death of an unborn viable fetus was maintainable and that the parents were entitled to recover for the net value of services they would have received from the child. The court in *Pehrson v. Kistner,* 301 Minn. 299, 222 N.W.2d 334 (1974), while recognizing that determining compensation for the death of a child may not be easy, noted that it would be difficult to imagine a case where a human being would not have some monetary value. In *Jones v. Karraker,* 109 Ill.App.3d 363, 64 Ill.Dec. 868, 440 N.E.2d 420 (1982), *aff'd.* 98 Ill.2d 487, 75 Ill.Dec. 233, 457 N.E.2d 23, a jury award of $125,000.00 for the wrongful death of a fetus during delivery was upheld. The court found a rebuttable presumption of pecuniary loss to the parents based on anticipated earning power of the child and its probable contribution to the parents had it survived. The presumption was supported by evidence that the fetus was healthy, and the absence of evidence to indicate that the child would not have had a normal life expectancy. *Id.* Thus I conclude that mere difficulty in ascertaining compensatory damages cannot justify denying the plaintiff Pieroni's right to maintain his action. *See Chrisaforgeorgis v. Brandenberg,* 55 Ill.2d 368, 304 N.E.2d 88 (1973).

Defendant's Motion to Dismiss the plaintiff Pieroni's claim for damages from the alleged wrongful death of his unborn son is denied.

### V. Exemplary Damages.

Plaintiffs seek exemplary damages, under their negligence and outrageous conduct claims, for the alleged acts of the defendant's employees in serving Brown alcohol while he was obviously intoxicated. However they do not allege that the defendant Feld personally failed to exercise proper care, or directly authorized, approved or participated in any negligent or outrageous act.

Since this is a diversity case, I must follow the long-standing Colorado rule that a principal cannot be held liable for exemplary damages for the act of an agent absent a showing that the principal: (a) authorized or approved the servant's tortious act; or (b) approved or participated in the act; or (c) failed to exercise proper care in selecting its servant. *Fitzgerald v. Edelen,* 623 P.2d 418, 423 (Colo.App.1980). The same rule has been approved by the Tenth Circuit. *See Malandris v. Merrill Lynch,* 703 F.2d 1152, 1174 (10th Cir.1981).

Plaintiffs are granted leave to file an amended complaint alleging facts, if they exist, in support of their claims for exemplary damages.

Accordingly,

IT IS ORDERED that the plaintiffs' second and sixth claims are dismissed without prejudice and the plaintiffs' prayer for relief under the wrongful death statute for damages other than net pecuniary loss is stricken. Plaintiffs' claims for punitive or exemplary damages are dismissed without prejudice subject to the filing of an amended complaint. Defendant's motion to dismiss, or in the alternative for summary judgment, is denied as to all other matters.