ATTORNEY FOR APPELLANTS ATTORNEYS FOR APPELLEE

Glenn A. Deig Patricia K. Woodring Evansville,
Indiana Shawn M. Sullivan
 Terrell, Baugh, Salmon & Born LLP
 Evansville, Indiana

 IN THE

 SUPREME COURT OF INDIANA

REBECCA BOLIN and CALVIN BOLIN, )
 )
 Appellants (Plaintiffs Below), ) No. 87S01-0203-CV-177
 ) in the Supreme Court
 v. )
 ) No. 87A01-0006-CV-183
Brandon A. Wingert, ) in the Court of Appeals
 )
 Appellee (Defendant Below). )

 APPEAL FROM THE WARRICK CIRCUIT COURT
 The Honorable Donald G. Hendrickson, Judge
 Cause No. 87C01-9802-CT-056

 March 11, 2002

SHEPARD, Chief Justice.

 In a case of first impression under Indiana’s Child Wrongful Death
Statute, we address the question whether an eight- to ten-week-old fetus
fits the definition of “child.” We conclude that it does not.

 Facts and Procedural History

 While driving on April 13, 1996, Rebecca Bolin stopped her car in the
roadway, waiting for the car in front of her to turn. Brandon Wingert
struck Bolin’s vehicle from behind, and Bolin suffered several injuries,
including a miscarriage. Bolin was eight to ten weeks pregnant at the
time.

 On February 5, 1998, Bolin and her husband Calvin filed suit. Count
III of their complaint alleged that Wingert caused Bolin’s miscarriage and
requested compensation for the wrongful death of their unborn child. In
response, Wingert moved for partial summary judgment, alleging that the
Child Wrongful Death Statute[1] did not provide for such a recovery. The
trial court granted Wingert’s motion.

 The Bolins appealed, and the Court of Appeals held that “child” was
not expressly defined by the legislature. Bolin v. Wingert, 742 N.E.2d 36,
37 (Ind. Ct. App. 2001). Relying on a 1972 decision, the court held that
only “an unborn viable child” had a claim under the Wrongful Death Statute.
 Id. at 38 (emphasis in original)(citing Britt v. Sears, 150 Ind. App. 487,
498, 277 N.E.2d 20, 27 (1972)). Because the Bolins had not produced any
evidence that the unborn child was “capable of independent life,” the Court
of Appeals affirmed the trial court’s grant of partial summary judgment.
Id.

 I. Standard of Review

 Summary judgment is appropriate only where the evidence shows that
there is no genuine issue of material fact and that the moving party is
entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); Shell
Oil Co. v. Lovold Co., 705 N.E.2d 981 (Ind. 1998). All facts and
reasonable inferences drawn from those facts are construed in favor of the
nonmoving party. Id. at 984. An appellant bears the burden of
demonstrating it was error to grant summary judgment, though appellate
courts scrutinize such rulings carefully to assure that a party was not
improperly denied his or her day in court. Owens Corning Fiberglass Corp.
v. Cobb, 754 N.E.2d 905 (Ind. 2001)(citations omitted).

 The Applicable Wrongful Death Statute

 At common law, a person killed by another’s tortious acts had no
right to recover damages. The victim’s dependents or other heirs therefore
had no recognized cause of action, either. This inequity gave rise to
wrongful death statutes, first in England in 1846, and soon thereafter in
every United States jurisdiction. See Stuart M. Speiser et al., Recovery
for Wrongful Death and Injury § 1.1, 1.8 (1992). Indiana’s wrongful death
statutes are found at Indiana Code § 34-23-1-1 (general wrongful death
statute), § 34-23-1-2 (death of adult persons), and § 34-23-2-1 (injury or
death of children).

 We first note that appellants cited the wrong version of the Child
Wrongful Death Statute to the trial court and Court of Appeals. (See
Appellant’s Br. at 7.) At the time of the accident in 1996, Indiana’s
Child Wrongful Death Statute was found at Indiana Code § 34-1-1-8. This
version of the statute reflected major legislative revisions made in 1987
and 1989, including the addition of a definition of “child.” See P.L. 306-
1987; P.L. 33-1989.[2] The Court of Appeals relied on a version of the
statute that preceded the 1987 and 1989 amendments.[3]

 The applicable statute provides that “[a]n action may be maintained
under this section against the person whose wrongful act or omission caused
the injury or death of a child.” Ind. Code Ann. § 34-1-1-8(b) (West 1996).
 It defines “child” as follows:
 As used in this section, “child” means an unmarried individual without
 dependents who is:
 (1) less than twenty (20) years of age; or
 2) less than twenty-three (23) years of age and is enrolled in an
 institution of higher education or in a vocational school or
 program.

Id. at § 34-1-1-8(a). The statute allows parents to recover damages for
the loss of the child’s services, love, and companionship, as well as
expenses such as hospital bills and funeral costs resulting from the
child’s death. See id. at § 34-1-1-8(e).

 The Bolins argue that the definition of “child” encompasses all unborn
children. Wingert asserts that Indiana’s Child Wrongful Death Statute does
not cover unborn fetuses incapable of independent life. (See Appellants’
Br. at 5; Appellee’s Br. at 6.)

 III. Interpreting the Child Wrongful Death Statute

 When interpreting a statute, appellate courts independently review a
statute's meaning and apply it to the facts of the case under review. If a
statute is unambiguous, that is, susceptible to but one meaning, we must
give the statute its clear and plain meaning. See Elmer Buchta Trucking,
Inc. v. Stanley, 744 N.E.2d 939, 942 (Ind. 2001). If a statute is
susceptible to multiple interpretations, however, we must try to ascertain
the legislature's intent and interpret the statute so as to effectuate that
intent. Id. (citing Whitacre v. State, 629 N.E.2d 1236 (Ind. 1994)). We
presume the legislature intended logical application of the language used
in the statute, so as to avoid unjust or absurd results. Sales v. State,
723 N.E.2d 416, 420 (Ind. 2000).

 We begin by mentioning what this case is not. It does not call for
“any moral, philosophical or theological determination[s] of what
constitutes a person or a life.” Wade v. United States, 745 F. Supp. 1573,
1577 (D. Haw. 1990). While the larger, more politically charged issues in
this field are quite apparent, our sole task is to determine the scope of
the word “child” in the Wrongful Death Statute.

 In the absence of clear legislative guidance, the challenge is where
to draw the line against otherwise open-ended liability. See W. Page
Keeton et al., Prosser and Keeton on the Law of Torts 287 (5th ed. 1984).
While this is not always an easy task, we bear in mind Justice Holmes’
words: “Neither are we troubled by the question where to draw the line.
That is the question in pretty much everything worth arguing in the law.”
Irwin v. Gavit, 268 U.S. 161, 168 (1925) (citation omitted).

 Our research reveals a wealth of court opinions and scholarship on
the subject of wrongful death and the unborn child. See, e.g., Sheldon R.
Shapiro, Right to Maintain Action or to Recover Damages for Death of Unborn
Child, 84 A.L.R.3d 411 (1978 & Supp. 2001). Although each state has a
uniquely drafted wrongful death statute, courts have generally resolved
this question in one of four ways: (1) permit recovery only for the death
of children “born alive,”[4] (2) permit recovery only for the death of
“viable” unborn children,[5] (3) permit recovery for the death of unborn
children that are “quick,”[6] and (4) permit recovery for the death of any
unborn child.[7] See, e.g., Mamta K. Shah, Inconsistencies in the Legal
Status of an Unborn Child: Recognition of a Fetus as Potential Life, 29
Hofstra L. Rev. 931, 938-51 (2001); Daniel S. Meade, Wrongful Death and the
Unborn Child: Should Viability Be a Prerequisite for a Cause of Action?,
14 J. Contemp. Health L. & Pol’y 421, 426-44 (1998).

 Although this scholarship is helpful, we must focus on the language of
Indiana’s Child Wrongful Death Statute. While the legislature has clearly
set upper limits on the definition of “child,” it is not as plain that it
has placed a “lower” limit on the definition of “child.”

 A. The Wrongful Death Statute’s Express Language. In Britt v.
Sears, 150 Ind. App. 487, 277 N.E.2d 20 (1971), the Court of Appeals
addressed a prior version of Indiana’s Child Wrongful Death Statute that
lacked a definition of “child.”[8] The Court of Appeals provided the
following thoughtful analysis:
 [W]e find no objective reason for saying that the 1881 Legislature
 which gave the father the right to “maintain an action for the injury
 or death of a child” did not intend “child” to include a stillborn
 child. Whatever was in their minds is not recorded and is, at best, a
 matter of mere supposition. But if we may, arguendo, indulge in our
 own supposition it would be this: That since actions for pre-natal
 injuries and deaths were then unknown in Indiana jurisprudence our
 lawmakers very probably gave no thought to whether they were creating
 an action for pre-natal injury or pre-natal death, or whether their
 word “child” was the same word “child” so often used in referring to a
 pregnant woman as being “with child.”

150 Ind. App. at 494, 277 N.E.2d at 24-25.[9] Without a definition of
“child” for guidance, the court concluded that a “full term healthy male
capable of independent life” was a “child within the meaning of the
statute.” 150 Ind. App. at 498, 277 N.E.2d at 27.

 The 1987 revisions of the Child Wrongful Death Statute present us
with a very different situation today. Rather than relying exclusively
upon policy and logic, as the Britt court was forced to do, we are now able
to consider the evident intent of the legislature as expressed by the
provisions it added to the Indiana Code. These provisions do not support
the conclusion the Bolins seek.

 We look first to the legislature’s basic definition of “child”: “an
unmarried individual without dependents who is less than twenty (20) years
of age.” Ind. Code Ann. § 34-1-1-8(a) (West 1996). This definition
contains four concepts: an (1) unmarried, (2) individual, (3) without
dependents, (4) who is less than twenty years of age.

 The first three concepts tend to indicate the legislature
contemplated that only living children would fall within the definition of
“child.” “Unmarried” and “without dependents” involve activities in which
only living persons engage. While very young children cannot marry or have
dependents, the vocabulary suggests a desire to define persons who have
been born. It would strain this rather express language to read “unmarried
individual without dependents” to encompass an unborn child. A foremost
precept of statutory interpretation is avoiding illogical and absurd
results. See Mayes, 744 N.E.2d at 393.

 The words chosen by the legislature to define “child” have accepted
public meanings that point in a similar direction. Black’s Law Dictionary
defines “individual” as “[e]xisting as an indivisible entity.” Black’s Law
Dictionary 777 (7th ed. 1999). Webster’s Dictionary says among other
things that an “individual” is a being “referred to by a proper name.”
Webster’s Third New International Dictionary 1152 (1993). This is language
human beings use to describe other independently living human beings.

 In contrast to the apparent meaning of the express language used in
the statute at issue in this case, in other contexts the legislature has
enacted protections for unborn children using explicit language. For
example, Indiana Code § 35-42-1-6, enacted in 1979, imposes criminal
liability for the knowing or intentional termination of a human
pregnancy.[10] See P.L. 153-1979, Sec. 3; Ind. Code Ann. § 35-42-1-6 (West
1998). In addition, the legislature has made it a crime to traffic in
fetal tissue.[11] See Ind. Code Ann. § 35-46-5-1 (West 1998).

 From these statutes, it is apparent that the legislature knows how to
protect unborn children. The fact that the legislature did not expressly
include unborn children within the definition of “child” in the Child
Wrongful Death Statute lends further credence to our conclusion that an
eight- to ten-week-old fetus does not meet the statute’s definition of
“child.”

 As we observed above, the wrongful death action is entirely a
creature of statute. Durham v. U-Haul Int’l, 745 N.E.2d 755 (Ind. 2001).
Because this statute is in derogation of the common law, we construe it
strictly against the expansion of liability. Ed Wiersma Trucking Co. v.
Pfaff, 643 N.E.2d 909, 911 (Ind. Ct. App. 1994), opinion adopted by 678
N.E.2d 110 (Ind. 1997).

 The express language of the statute and the fact that it is to be
narrowly construed lead us to conclude that the legislature intended that
only children born alive fall under Indiana’s Child Wrongful Death Statute.
 The legislature can certainly expand the scope of protection under the
Child Wrongful Death Statute if it so chooses.

 B. A Mother’s Remedy. The exclusion of unborn children from
Indiana’s Child Wrongful Death Statute does not mean that negligently
injured expectant mothers have no recourse. As the Missouri Supreme Court
has observed, “[T]he mother has her own action for negligently inflicted
injury, in which the circumstances of her pregnancy and miscarriage may be
brought out and considered as part of the intangible damages.” Rambo v.
Lawson, 799 S.W.2d 62, 63 (Mo. 1990), superseded by statute as stated in
Connor v. Monkem Co., 898 S.W.2d 89 (Mo. 1995).

 It is well established in Indiana law that damages are awarded to
compensate an injured party fairly and adequately for her loss, and the
proper measure of damages must be flexible enough to fit the circumstances.
 Bader v. Johnson, 732 N.E.2d 1212 (Ind. 2000). In tort actions generally,
all damages directly related to the wrong and arising without an
intervening agency are recoverable. Erie Ins. Co. v. Hickman, 622 N.E.2d
515 (Ind. 1993).

 It is hornbook law that a tortfeasor takes the injured person as he
finds her, and the tortfeasor is not relieved from liability merely because
an injured party’s pre-existing physical condition makes him or her more
susceptible to injury. When some injury was foreseeable and the
defendant's negligence proximately caused the aggravated injury, this rule
allows recovery for an injury even if its ultimate extent was
unforeseeable. Morton v. Merrillville Toyota, Inc., 562 N.E.2d 781 (Ind.
Ct. App. 1990).

 Count I of the Bolins’ complaint seeks compensation for the pain and
suffering Rebecca incurred as a result of the accident. (R. at 7.)[12] It
is foreseeable that pregnant mothers may be driving on the roadway and that
negligent operation of a vehicle may injure these expectant mothers.
Rebecca may claim damages to compensate her for her miscarriage.

 Conclusion

 We affirm the decision of the trial court.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.
-----------------------
[1] Ind. Code Ann. § 34-23-2-1 (West 1998).
[2] Since 1989, the statute has remained unchanged, though it was
recodified as Indiana Code § 34-23-2-1 in 1998. See P.L. 1-1998, Sec. 18.
[3] The Court of Appeals quoted the statute as follows:

 The father and mother jointly, or either of them by naming the other
 parent as a co-defendant to answer as to his or her interest, or in
 case of divorce or dissolution of marriage the person to whom custody
 of the child was awarded, may maintain an action for the injury or
 death of a child; and a guardian may maintain such action for the
 injury or death of his ward; in case of death of the person to whom
 custody of the child was awarded, a guardian shall be appointed to
 maintain an action for the injury or death of his ward. But when the
 action is brought by the guardian for an injury to his ward, the
 damages shall inure to the benefit of his ward.

Bolin, 742 N.E.2d at 37.
[4] See, e.g., Justus v. Atchison, 565 P.2d 122 (Cal. 1977), disapproved of
by Ochoa v. Superior Court, 703 P.2d 1 (Cal. 1985); Hernandez v. Garwood,
390 So. 2d 357 (Fla. 1980); Stern v. Miller, 348 So. 2d 303 (Fla. 1977);
Endresz v. Friedberg, 248 N.E.2d 901 (N.Y. 1969); Sosebee v. Hillcrest
Baptist Med. Ctr., 8 S.W.3d 427 (Tex. App. 1999). The “born alive” rule
generally requires that the injured child be born alive before recovery is
permitted. Our research reveals that about ten states adhere to the “born
alive” standard.
[5] See, e.g., Eich v. Town of Gulf Shores, 300 So. 2d 354 (Ala. 1974);
Mone v. Greyhound Lines, Inc., 331 N.E.2d 916 (Mass. 1975); Verkennes v.
Corniea, 38 N.W.2d 838 (Minn. 1949). The “viability” standard is the
predominant rule, followed by over thirty states. See Sarah J. Loquist,
The Wrongful Death of a Fetus: Erasing the Barrier Between Viability and
Nonviability, 36 Washburn L.J. 259, 259-60 (1997). A fetus is viable when
it is “so far formed and developed that if then born it would be capable of
living.” Thibert v. Milka, 646 N.E.2d 1025, 1025 n.3 (Mass. 1995)
(citations omitted).
[6] See Shirley v. Bacon, 267 S.E.2d 809 (Ga. Ct. App. 1980). A child is
considered “quick” when the fetus “is able to move in its mother’s womb.”
Id. at 811 (citation omitted). Georgia is the only state we found that
follows the “quick” standard.
[7] See, e.g., Connor v. Monkem Co., 898 S.W.2d 89 (Mo. 1995); Wiersma v.
Maple Leaf Farms, 543 N.W.2d 787 (S.D. 1996); Farley v. Sartin, 466 S.E.2d
522 (W. Va. 1995). States permitting wrongful death actions for non-viable
fetuses are in the minority. See Louquist, supra note 4, at 278-80. Based
on our research, West Virginia is in fact the only state that allows
recovery for non-viable fetuses without express language from the
legislature that “unborn children” are included within the scope of the
state’s wrongful death statute.
[8] As opposed to the eight- to ten-week-old fetus in our case, the unborn
child in Britt was in gestation for nine months and one week. 150 Ind.
App. at 488, 277 N.E.2d at 21.
[9] In Britt, the wrongful death statute in question was enacted in 1881.
We note a substantial research tool not cited by any of the parties. The
“Brevier Legislative Reports,” published biennially between 1858 and 1887,
are verbatim reports of legislative history of the Indiana General Assembly
during those years. See Justin E. Walsh, The Centennial History of the
Indiana General Assembly, 1816-1978 at 238-39 (1987).
[10] Indiana Code § 35-42-1-6 states that “[a] person who knowingly or
intentionally terminates a human pregnancy with an intention other than to
produce a live birth or to remove a dead fetus commits feticide, a Class C
felony. This section does not apply to an abortion performed in compliance
with . . . IC 16-34.”
[11] Indiana Code § 35-46-5-1(d) states that “[a] person who intentionally
acquires, receives, sells, or transfers in exchange for an item of value .
. . fetal tissue commits unlawful transfer of human tissue, a Class C
felony.” “Fetal tissue” is defined as “tissue from an infant or a fetus
who is stillborn or aborted.” Id. at § 35-46-5-1(a).
[12] Count II of the complaint seeks compensation for Calvin Bolin’s loss
of consortium with his wife.