# No. 13,838.

## Metzger *v.* The People in the Interest of the Unborn Child of Genevieve Conzone.

(53 P. [2d] 1189)

Decided January 6, 1936.

Mr. B. A. GATES, for plaintiff in error.

Mr. F. E. DICKERSON, Mr. T. J. MORRISSEY, Mr. CHARLES D. BROMLEY, for the people.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

IN the juvenile court of Denver a proceeding was instituted against the respondent, plaintiff in error here, by the filing of a petition which alleges: "That the * * * unborn child of Genevieve Conzone is a dependent unborn child for the following reasons and causes, to-wit: That it has not proper parental care; that it is entitled to support and care by its father [the respondent] and its father * * * has failed to support or care for said unborn child, by failing and refusing to provide for the support of the mother of said unborn child unless she will consent to relinquish the child after its birth or to other plans which do not meet her approval. * * * That the * * * respondent * * * has encouraged, caused or contributed to the dependency of said child, in the manner and in the particulars following, to-wit: Said respondent is the father of said unborn child, who is dependent as herein above set forth, and is able to support and care for said unborn child, and is able to support and care for the mother of said unborn child during her maternity period, and has knowledge of the condition of dependency of said unborn child as aforesaid, and he has failed to provide said unborn child and the mother of said unborn child with the proper support and maintenance as aforesaid.''

A jury trial was duly had. The respondent was found guilty and was ordered to pay a specified percentage of

his earnings to the expectant mother. By motions to quash and for a new trial and for arrest of judgment, the respondent attacked the proceedings on the ground that the court lacked jurisdiction and on the ground that the statute upon which the proceedings were based is unconstitutional when applied, as here, to an unborn child. The two grounds are in the present case closely related, and we shall deal with them together.

The laws underlying the jurisdiction of the juvenile court are a matter of gradual growth, following in general outline the development of modern principles within this important field.

The original statute is entitled ''an act concerning dependent and neglected children.'' S. L. 1907, chapter 168, page 361. By section 1 thereof, which was section 602, C. L. 1921, dependent and neglected children were expressly made to include ''any child under 16 years of age who is dependent upon the public for support, or who is destitute, homeless or abandoned, or who has not proper parental care or guardianship; or who habitually begs or receives alms; or who is found living in any house of ill-fame, or with any vicious or disreputable persons; or whose home by reason of neglect, cruelty or depravity on the part of its parents, guardian or other person in whose care it may be, is an unfit place for such child; or whose environment is such as to warrant the state, in the interest of the child, in assuming its guardianship.''

In 1923, an act was passed to amend the aforesaid act. Thereby the definition of a dependent or neglected child was changed. The new act provided as follows:

''For the purpose of this Act, the words 'dependent child' or 'neglected child' shall mean any child under the age of eighteen years who [answers the above quoted description, with slight verbal changes and additions] * * *; or who, in the opinion of the court, is entitled to support or care by its parent or parents, where it appears that the parent or parents are failing or refusing

to support or care for said child; * * * or whose environment is such, or about whose custody a controversy may be such as to warrant the State, in the interest of the child, in assuming or determining its guardianship, or in determining what may be for the best interest of said child * * *.

"The laws of this State concerning dependent or neglected children or persons who cause, encourage or contribute thereto, shall be construed to include all children under the age mentioned herein from the time of their conception and during the months before birth." S. L. 1923, chapter 77, section 1, page 204.

It is contended that this amendatory act violates section 21 of article V in the Constitution of Colorado which says: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

From the constitutional standpoint, a broad and general title is better than a title attempting to catalogue the constituent parts of an act. The above mentioned 1907 title is ideal in that respect. The question arises whether the amendment has introduced under the title something which is essentially and necessarily foreign to the subject indicated. The efficiency of social legislation depends largely upon the definition of terms. There is no single adamantine signification in the expressions "dependent child" and "neglected child." We naturally look to the General Assembly for the meaning intended to be attached. No better means of accomplishing the purpose can be imagined than a formal definition.

The question here, then, becomes one as to whether the General Assembly exhausted its power of definition, once for all, by stating in 1907 the meaning of the terms used in the title of the 1907 act. Can the original statutory definition be changed or not? The

legislative power of the law-making branch is plenary except as it is subject to constitutional limitations. If the original definition had been the amended one of 1923 instead of the one given in 1907, it could not properly be argued that the act was unconstitutional because of the general nature of the title. This would then unquestionably be deemed broad enough to include the portion added by the 1923 amendment. Legislation is a practical business. Its concrete results should not be rendered futile or uncertain by the application of mere technicalities. Since laws are the things by which a state attempts to keep step with human advancement, the courts are not permitted lightly to interfere with them. What could have been done by direct enactment in 1907 may be done indirectly by amendment in 1923; even by enlarging the definition of the terms employed in the title, provided there is nothing inherently unreasonable in the amendment. Compare: *Industrial Com. v. Continental Co.*, 78 Colo. 399, 403, 242 Pac. 49, 50, where it was said: ''It is germane to the title of the act to define the terms as used in the act. That is what section 49 does, extending the definition beyond the scope of that of the dictionary, perhaps, but, nevertheless, defining it. If it has misdefined one of those words according to the dictionary, would the act to that extent be unconstitutional? If so, every act that defines a word must stay strictly with the dictionary or define that word also in the title, which has never been done so far as we are aware.''

No violence is done to the orderly process of the rational mind by letting the word ''child'' include a human being immediately upon conception and during the period of pregnancy, as well as one actually born. It is no longer doubted that the months of prenatal existence are tremendously important ones from the standpoint of human welfare. The physical and mental conditions surrounding the expectant mother are vital factors in the unfolding life of the child itself. Her lack of ade-

quate nourishment and shelter, her bodily discomforts and hardships, the worries of mind usually accompanying the tragic situation which confronts us in such a case as this, are a proper basis for compelling the father of the unborn child to remove at least some of the disadvantages in these conditions. He has brought them upon the woman and thereby jeopardized the health and safety of his offspring as a future citizen of the community.

The policy of legislation is for determination by the General Assembly, not by the courts. When the respondent complained of the amendment, it had been on the statute books for nearly a dozen years. We cannot see how he could have been unduly surprised or in any way prejudiced. The court entered a judgment requiring payment by the defendant of thirty per cent of his earnings for the benefit of the unborn child as aforesaid. This seems a reasonable exercise of powers conferred upon the juvenile court by chapter 158, S. L. 1909, page 339 (C. L. 1921, sections 669-675) and other statutory provisions. It is charged that the act complained of violates the Fifth Amendment of the United States Constitution, and sections 21 and 25 in article V of the Colorado Constitution. No such violations have been shown, and the judgment of the juvenile court must be affirmed.

Judgment affirmed.

MR. JUSTICE CAMPBELL not participating.