'Cox v. Court of Common Pleas of Franklin County, Division of Domestic Relations, Juvenile Branch.

(No. 88AP-856—Decided December 13, 1988.)

*Thomas G. Shanahan,* for relator.

*Michael Miller,* prosecuting attorney, and *Jeffrey L. Glasgow,* for respondent.

*James Kura,* county public defender, *Allen V. Adair* and *Paul Skendelas,* for guardian ad litem.

*Schwartz, Kelm, Warren & Rubenstein, Julia A. Davis;* and *Elinor Alger,* for *amicus curiae* American Civil Liberties Union of Ohio Foundation, Inc.

REILLY, J. Relator, Janet Cox, has filed this original action requesting a writ of prohibition ordering the respondent court to cease the exercise of juvenile court jurisdiction over her in a dependency and neglect action. The case was referred to a referee, pursuant to Civ. R. 53.

The referee rendered a report on November 1, 1988, including findings of fact and conclusions of law. He recommended that a writ of prohibition issue ordering the respondent court to cease its exercise of juvenile court jurisdiction over relator, an adult over the age of eighteen years.

The respondent court appointed the Franklin County Public Defender as guardian ad litem for relator's unborn child. The guardian ad litem has moved to intervene and the referee has recommended the allowance of intervention in this case. The motion is sustained.

The parties have filed briefs in support of, as well as in opposition to, the referee's report.

The issue in this action was previously defined by journal entry, dated October 26, 1988, which stated, in pertinent part, as follows:

"* * * The Court notes various references in the memoranda filed herein by counsel to issues that are not before this Court including whether a fetus is a 'child' or 'person' within the meaning of various statutes and whether the trial court has jurisdiction over a fetus. Those are not issues herein and are not determined, even temporarily, hereby. The sole issue before this Court is whether the respondent court, a juvenile court, has been conferred jurisdiction over the person and body of a pregnant woman so as to control her personal life for the benefit of the unborn child she is carrying, and not whether the state may exercise such control through some appropriately adopted statutes * * *."

The record in this case depicts a deplorable factual situation and presents a very legitimate problem of public concern. The basic task before this court, however, is the application of the current law within the focus established by the above entry.

The referee made the following pertinent findings of fact:

"1. Relator, Janet Cox, is more than eighteen years of age.

"2. Respondent is the Franklin

County Court of Common Pleas, Division of Domestic Relations, which has been granted the powers and jurisdiction of a juvenile court as provided by R.C. Chapter 2151.

"3. On September 15, 1988, a complaint was filed in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. The complaint was styled 'In the Matter of Unborn Child Cox' and assigned case number 88JU-09-6153. The complaint alleges in pertinent part:

" '2151.03(B)

" " 'Neglected child

" 'Child lacks proper parental care and supervision due to the faults and habits of the parents, to wit: Mother is approximately seven (7) months pregnant with this child. Mother is a known drug user and has used cocaine and opiates throughout her pregnancy. Mother is now on the methadone program for her drug problem. Mother has failed twenty-three (23) drug screenings during her pregnancy. Father also abuses drugs and had been hospitalized this year after injecting a potentially lethal dose of drugs. Mother has refused prenatal care for the child and father has not reinforced the importance of prenatal care. Parents have four other children who are all in relative placement with permanent custody proceedings pending in this court. Fetus is being subjected to a life threatening situation by the parents. Child is in need of protection.

" 'SECOND CAUSE OF ACTION

" 'Dependent Child

" '2151.04(C)

" 'The conditions or environment is such as to warrant the state in the interests of the child to assume legal custody, to wit: the complainant hereby incorporates the allegations of the first cause of action as if repeated verbatim herein.

" 'And that the name of the person having custody or control of said minor child(ren) is: *Janet Cox* * * *.'

"4. On September 16, 1988, a preliminary hearing was held before the juvenile court. See Juv. R. 21. At the hearing, relator's attorney orally moved to dismiss the actions on the grounds that the juvenile court did not have jurisdiction over relator or her unborn child.

"5. On September 23, 1988, the juvenile court filed a journal entry which states in pertinent part:

" 'This day this cause came on for hearing and the court being fully advised in the premises, and for good cause shown hereby finds:

" 'On September 16, 1988, the court finds there is jurisdiction to proceed with this case. Court finds that the unborn fetus is approximately six months [of age and a "person"]. Court orders that the mother, Janet Cox, not use any illegal drugs that will endanger the unborn child and to submit herself to a medical examination to determine the health of the unborn child.' (Brackets indicate handwritten notation.)

"6. The state of Ohio filed a motion for contempt in the juvenile court in case number 88JU-09-6153. The motion is stated in three paragraphs as follows:

" 'The State of Ohio, by and through the Franklin County Prosecuting Attorney, requests the Court to find Janet Cox in Contempt of Court for failure to obey and comply with former Orders of the Court to get prenatal care and a physical examination by a physician and to "abstain from the use of illegal drugs."

" 'The State further requests the Court to Order Janet Cox before the Court to explain to the Court what prenatal care and physical examinations have occurred and by whom they were completed. The State requests that following said information being

provided, the Court Order said medical records for verification.

" 'The State further requests that the Court place Janet Cox in a secure drug treatment facility where she can be kept from continuing to violate the Court's Order and therefore injuring the "unborn child." '

"7. On October 20, 1988, the state of Ohio filed an amended motion for contempt in the juvenile court in case number 88JU-09-6153. The amended motion deleted the language of the third paragraph of the original motion.

"8. The juvenile court scheduled the motion for hearing."

The issue is now before this court for determination. Three standards must be met before a writ of prohibition will issue: (1) the court or officers against whom relief is sought must be about to exercise judicial or quasi-judicial power; (2) the exercise of such power must be unauthorized by law; and (3) it must appear that the refusal of the writ would result in injury for which there is no other adequate remedy at law. *State, ex rel. Racing Guild of Ohio,* v. *Morgan* (1985), 17 Ohio St. 3d 54, 17 OBR 45, 476 N.E. 2d 1060. The first prerequisite is, of course, fulfilled. The other two involve the basis of this case.

The juvenile court is exclusively statutory. The General Assembly has granted it particular jurisdiction, which may not be transcended. It is a court of record within the division of domestic relations of the common pleas court, pursuant to R.C. 2151.07, which provides that the juvenile court shall have the jurisdiction granted by R.C. 2151.01 to 2151.99.

The juvenile court's jurisdiction is set forth in R.C. 2151.23, which reads in pertinent part:

"(A) The juvenile court has exclusive original jurisdiction under the Revised Code:

"(1) Concerning any child who on or about the date specified in the complaint is alleged to be a juvenile traffic offender, or a delinquent, unruly, abused, neglected, or dependent child[.]"

The Juvenile Code defines a "child" in R.C. 2151.011(B)(1): " 'Child' means a person who is under the age of eighteen years * * *."

Further, the code defines "adult" in R.C. 2151.011(B)(2): " 'Adult' means an individual eighteen years of age or older."

The single mention in R.C. Chapter 2151 of pregnancy is in R.C. 2151.85, which concerns the filing of a complaint in the juvenile court on behalf of a pregnant unmarried woman under eighteen years of age who is unemancipated and who chooses to have an abortion without notification of her parents, guardian or custodian. Manifestly, that section has no relation to this case.

It is emphasized that, as specifically stated in the above-quoted journal entry, the questions as to whether the juvenile court can exercise jurisdiction over an unborn child and whether the statutory definition of "child" includes "an unborn child" need not be determined by this court. The issue is whether the juvenile court can assume jurisdiction over relator, an adult, for the purpose of regulating her life for the benefit of the unborn child.

The respondent court and the guardian ad litem maintain that R.C. 2151.359 authorizes the juvenile court to issue and enforce its order against relator. The statute provides the following:

"In any proceeding wherein a child has been adjudged delinquent, unruly, abused, neglected, or dependent, on the application of a party, or the court's own motion, the court may make an order restraining or otherwise controlling the conduct of any

parent, guardian, or other custodian in the relationship of such individual to the child if the court finds that such an order is necessary to:

"(A) Control any conduct or relationship that will be detrimental or harmful to the child;

"(B) Where such conduct or relationship will tend to defeat the execution of the order of disposition made or to be made.

"Due notice of the application or motion and the grounds therefor, and an opportunity to be heard shall be given to the person against whom such order is directed."

R.C. 2151.359 does not expand the jurisdictional limitations of R.C. 2151.23, which establishes the exclusive original jurisdiction of the juvenile court. The juvenile court's authority, included in R.C. 2151.359, refers only to the court's restraining authority required to enforce its dispositions within its jurisdiction.

The respondent court also contends that the jurisdiction issue is one of fact, which this court should not disrupt, unless raised on appeal. The pertinent facts necessary to determine jurisdiction, however, are not in dispute. The question of relator's remedy is irrelevant when respondent clearly acted without jurisdiction. Further, since respondent is without jurisdiction to act, the adequacy of a remedy at law is not determinative, even assuming an immediate remedy of appeal be available. Thus, the requirements of *State, ex rel. Racing Guild of Ohio, supra,* have been met.

Respondent cites this court's unreported opinion in *In re Pead* (June 10, 1980), Franklin App. No. 79AP-906, unreported, to advance its contention that it can regulate outside parties. In that case, the children had been adjudged dependent and temporary custody was granted to the Franklin County Children's Services. That case is distinguishable because it is based upon R.C. 2151.353 and 2151.359, both of which apply after adjudication.

The narrow issue in this action, simply stated, is whether the juvenile court can compel a pregnant woman to take action for the alleged benefit of her unborn child. Relator is not raising the issue of jurisdiction over the unborn child. The question raised involves jurisdiction over the mother. "Jurisdiction" is defined in Webster's Third New International Dictionary (1966) 1227, as "* * * the legal power, right, or authority to hear and determine a cause considered either in general or with reference to a particular matter * * *." Jurisdiction for the juvenile court, as stated above, is entirely controlled by statute. Hence, it plainly follows that the court did not have the jurisdiction it assumed.

This is not a case involving the discretion of the juvenile court, but is strictly a question of statutory jurisdiction. The court's obvious concern for the welfare of relator's unborn child cannot provide that court with jurisdiction to act in this matter. We sympathize with many of the sentiments raised by the dissent. However, as repeated above, the issue in this case is jurisdiction. Thus, those merit matters are not ripe for consideration and cannot be considered or determined in this case. We also do not determine herein whether any act of relator during her pregnancy may be the subject of further litigation after the birth of the child, if born alive.

No matter how "just" the cause, a court cannot confer jurisdiction upon itself to correct a perceived wrong. One fundamental concept of the separation of powers doctrine is that a court has only such jurisdiction as may be conferred upon it by law. A court cannot create its own jurisdiction.

The legislature has conferred upon the respondent court certain jurisdic-

tion. However, that court has not been given jurisdiction over the body of a woman who is carrying an unborn child, except to permit an unmarried juvenile mother of an unborn child to abort that child without notification to her parents, based solely upon either the maturity or best interest of the juvenile mother, without express limitations as to the stage of the pregnancy. See R.C. 2151.85 and R.C. 2919.11 *et seq.*

The General Assembly may choose to address this type of situation and design effective statutory authority, but until such time as it confers such jurisdiction upon the respondent court, it has no power, right, or jurisdiction to act in this matter. Moreover, private sector agencies and institutions might be very cooperative in lending their talents and resources to help find solutions to such problems as exist in this case.

In sum, however, as to the law in this case, the issue before this court is governed by statutory law as it now exists. The General Assembly, by statute, has determined the jurisdictional question for the time being. This court cannot properly assume the legislative function and create jurisdiction which has not been conferred by law. Such an approach would constitute judicial legislation and violate the fundamental constitutional principle of checks and balances which has been in effect in the United States for over two hundred years.

Therefore, the referee's report is approved and adopted. The writ of prohibition is issued.

*Motion to intervene sustained and writ of prohibition granted.*

WHITESIDE, P.J., concurs.

LYNCH, J., dissents.

JOHN J. LYNCH, J., retired, of the Seventh Appellate District, sitting by assignment.

WHITESIDE, P.J., concurring. Due to the emotional and fallacious tenor of the dissent, I am compelled to write to explain my reasons for my concurring in the majority opinion, rather than in the dissent.

The dissent is a classic example of the result of decision by emotion, rather than by reason. A judge, however, is obligated and required to apply the law as it is, rather than how he wishes it were, no matter how strong his personal feelings. If justice be determined by emotion rather than reason, justice is relegated to an end-justifies-the-means system, and impartial due process cannot exist.

The dissent does not discuss the only issue before us and determined herein, namely, whether or not the General Assembly has conferred upon the respondent court jurisdiction over the person and body of a pregnant woman for the alleged benefit of her unborn child. Whether or not the legislature should do so, *it has not.*

Unfortunately, the dissent takes off on an improper and unwarranted tangent and poses the question of "whether relator has a legal right to take cocaine and opiates during the third trimester" of her pregnancy. Such question is specious and inflammatory. The answer, of course, is an obvious, emphatic "No!" No person has a legal right to take cocaine and opiates whether or not pregnant. Use of cocaine and opiates is illegal by any person and constitutes a criminal offense.

The dissent then continues with an unsupported fallacious outburst and suggests that, if the respondent court has no jurisdiction over the mother's body, the mother then is licensed to take cocaine and opiates during her

pregnancy. This is so ridiculous that it should need no response. If it were made by counsel, we would deem it a frivolous argument subject to the penalties counsel must suffer for such a frivolous contention.

Additionally, the dissent focuses primarily upon the merits of the matter in the trial court, which not only is not before us but as to which we have no evidence upon which to predicate a determination. The dissent, however, based upon conjecture, speculation, and knowledge apparently gained from watching television programs, indulges in fanciful, instead of factual, conclusions, the accuracy of which we have no way of knowing from that which is properly before us. The fact that such allegations may have been made in the trial court does not make them correct any more than the fact that they may have been denied makes them incorrect.

The dissent then makes up for its lack of logical explanation as to the only issue before us (the fundamental jurisdiction issue) by use of buzz words such as "caution," "forbearance," and "furtherance of justice." Judges are men and women just like everyone else in society. We are not infallible, but we do have a job to do. But in performing our duties, we should do so fairly and impartially, setting aside our own personal opinions and feelings, and render decisions in accordance with the law as adopted by the General Assembly and not attempt to impose our own personal views of what the law should be, in order to remake and control society in our own personal concept of what society should be.

It is indeed unfortunate that the General Assembly has not yet enacted laws dealing with the rights of unborn children, at least during the third trimester, which even *Roe* v. *Wade* (1973), 410 U.S. 113, would permit. Instead, the only Ohio laws deal with per-

mitting abortions and protecting the life of aborted but viable fetuses. Implicit in the dissent is a suggestion that relator should be condemned because she, an alleged drug addict, chose to carry her child to childbirth, rather than abort it. Such suggestions as are contained in the dissent have no place in any legal decision, especially when predicated not upon evidence but upon allegations, rumor, conjecture, speculation, and information gained from watching television programs. Our justice system would indeed be in a sorry state if judicial decisions were predicated upon that which is observed watching television, instead of evidence presented at trial.

The dissent then goes forth to discussion of the merits of the trial court case, and the status of an unborn child, neither of which is before us nor determined by the majority herein. Even that analysis in the dissent is inconclusive as to the meaning of R.C. 2151.011(B)(1), and is inaccurate with respect to the basic jurisdictional issue before us, namely, whether a juvenile court has jurisdiction over the person and body of a pregnant woman so as to control her life and lifestyle during pregnancy for the alleged benefit of her unborn child. That is the only issue determined herein, despite the emotional outcry of the dissent.

Although not dispositive of the status of an unborn child with respect to all rights, the United States Supreme Court in *Roe* v. *Wade, supra,* expressly held that an unborn child is not a person within the contemplation of the constitutional due process protection. On the other hand, there are many instances where, once a child is born, the child's rights may relate back with respect to matters that occurred before the child's birth. Thus, in *Williams* v. *Marion Rapid Transit* (1949), 152 Ohio St. 114, 39 O.O. 433, 87 N.E. 2d 334, the second paragraph of the syllabus holds that:

"Injuries wrongfully inflicted upon an unborn viable child capable of existing independently of the mother are injuries 'done to him in his * * * person' * * * and, *subsequent to his birth,* he may maintain an action to recover damages for the injuries so inflicted." (Emphasis added.)

Similarly, in *Jasinsky* v. *Potts* (1950), 153 Ohio St. 529, 42 O.O. 9, 92 N.E. 2d 809, the Supreme Court held that a wrongful death action on behalf of the survivors could be maintained with respect to a child who died three months after its birth as a result of a prenatal injury negligently inflicted. Again, the child was born alive, and the issue was one of relation back to prenatal injuries. More recently, in *Werling* v. *Sandy* (1985), 17 Ohio St. 3d 45, 17 OBR 37, 476 N.E. 2d 1053, the Ohio Supreme Court extended the doctrine with respect to a wrongful death action for the benefit of the survivor of a stillborn child, where the child was stillborn as a result of prenatal injuries, but again the relation back occurred only after birth, albeit stillbirth. None of these cases even remotely deals with the issue before us, namely, whether a juvenile court has jurisdiction over the person and body of a pregnant woman to control her life and lifestyle during pregnancy for the alleged benefit of her unborn child.

Likewise, the question before us is not as is implicitly assumed by the dissent, whether such jurisdiction should be conferred upon a juvenile court. As stated in the majority opinion, this court has no power or right to confer upon a juvenile court jurisdiction which has not been conferred upon it by the General Assembly. There is not even one word in the dissent explaining how the General Assembly has conferred jurisdiction upon the juvenile court over the person and body of a pregnant woman to control her life and lifestyle during pregnancy for the benefit of her unborn child. On the other hand, after birth of the child, the juvenile court undoubtedly has jurisdiction over the newborn child, which may well include inquiry as to whether a presently dependent, neglected, or abused condition of the child was created as a result of prenatal conduct of the mother. Such question is neither before us nor determined hereby. Nevertheless, the dissent relies upon the trial court decision of *In re Ruiz* (1986), 27 Ohio Misc. 2d 31, 27 OBR 350, 500 N.E. 2d 935, with respect to a child who was born addicted to heroin. That case again has no bearing upon the issue before us, but, obviously, the juvenile court had jurisdiction over the child since it had been born and was unquestionably a living person at the time. More importantly, the cases referred to in the dissent deal with the rights of an unborn child, not with the jurisdiction of a juvenile court.

Likewise, it has been held that an unborn child is "a being" for the purpose of application of laws of inheritance. See *Phillips* v. *Herron* (1896), 55 Ohio St. 478, 45 N.E. 720. On the other hand, the Ohio Supreme Court has held that a viable unborn child is not a person within the meaning of statutes prohibiting the unlawful causing of the death of a person, in that case by vehicular homicide. See *State* v. *Dickinson* (1971), 28 Ohio St. 2d 65, 57 O.O. 2d 255, 275 N.E. 2d 599. See, also, *Robbins* v. *State* (1857), 8 Ohio St. 131.

All that evolves from the above is that the issue of when and at what time an unborn child becomes a person within the meaning of various laws is a complex issue, one not of easy resolution. If a child be born alive, generally, there may be a relation back in civil actions to prenatal injuries. But, as stated in the majority opinion, this issue need not be determined herein and is not decided by the majority decision herein. Rather, we have deter-

mined only a very narrow issue of jurisdiction of a juvenile court over the person and body of a pregnant woman so as to control her life and lifestyle during pregnancy for the alleged benefit of an unborn child. Until such time as the legislature sees fit to give such jurisdiction to the juvenile court, it has no such jurisdiction. This court has no right or power to confer such jurisdiction, and to do as the dissent implicitly suggests would be an abuse of power by this court.

Assuming the facts to be as speculated in the dissent,[1] my personal feelings and reactions would be sympathetic to some of the views expressed therein. However, for me to join in the dissent unsupported by, and contrary to, law, and without a semblance of evidentiary support, would constitute an act of judicial irresponsibility on my part. I must, therefore, concur in the majority opinion because it is in accordance with law and the evidence in the record before us. As judges, we must set aside our personal feelings and opinions and determine cases fairly and impartially in accordance with law. Accordingly, I concur.

LYNCH, J., dissenting. This judge dissents from the majority opinion and decision which approved and adopted the referee's report for the following two reasons:

(1) Prohibition is an extraordinary writ which should be used with great caution and forbearance for the furtherance of justice and in the exercise of a sound discretion to be determined in accordance with the circumstances of each particular case. In my opinion, one of the decisive legal questions in the case is whether relator has a legal right to take cocaine and opiates during the third trimester of relator's pregnancy when the fetus is viable and relator has chosen to carry this fetus to childbirth. Relator is an irresponsible drug addict who has taken cocaine and opiates throughout subject pregnancy. The legal effect of the decision of the majority of this court and the referee is to give legal permission to relator to take cocaine and opiates during the third trimester of her pregnancy which would have a detrimental effect both physically and mentally on the baby that will shortly be born. In my opinion, such decision is not made in the furtherance of justice; therefore, I would hold that relator is not entitled to have a writ of prohibition issued.

(2) In my view, relator is not entitled to any legal relief on the merits of this case. In my opinion, the facts of this case are unique because there is only one trial-level legal case cited by either party that is directly on point with the facts in this case, and the opinions of the majority members of this court and the referee are abstract, intellectual discussions of the general law without a proper consideration of the pertinent facts, which are as follows:

Relator has chosen to carry subject pregnancy to childbirth; therefore, there is going to be a child born as a result of this pregnancy and the cases on the issue of abortion are not applicable to this case.

The complaint was filed in the Juvenile Branch of the Division of Domestic Relations of the Franklin County Court of Common Pleas on September 15, 1988. At that time, relator was approximately seven

---

[1] Newspaper and other informal sources indicate that the child has been born alive and is not addicted to drugs and has suffered no apparent harmful effects. However, there has been no filing made herein formally to advise the court of such circumstances, and we may not take cognizance of such circumstances until such time as the record herein reflects that they have occurred.

months pregnant. The baby is expected to arrive in December. Thus, this case concerns a pregnancy in its third trimester and at a time when the fetus has become viable.

There have been enough television programs on the effects on newly born babies of their mothers' ingestion of drugs during their pregnancies that it is a matter of common knowledge that such babies are detrimentally affected thereby both physically and mentally; that such mothers are so irresponsible that such babies are generally removed from their custody; and that potential adoptive parents are reluctant to adopt children affected by drug-addicted mothers. In my opinion, the conduct of relator in taking drugs during subject pregnancy amounts to neglect of the baby in her womb pursuant to R.C. 2151.03(B).

The decisive question in this case is whether such baby in her womb is a "child" within the meaning of R.C. 2151.011(B)(1), which states, in pertinent part, as follows: " 'Child' means a person who is under the age of eighteen years * * *." The majority members of this court and the referee based their opinions on the basis that such statute does not specifically mention viable babies in the wombs of their mothers. There are no cases directly in point to support such decision. There is a case directly on point to support the decision of the juvenile court judge.

*In re Ruiz* (1986), 27 Ohio Misc. 2d 31, 27 OBR 350, 500 N.E. 2d 935, quotes R.C. 2151.011(B)(1) in a case which involved an abuse action in juvenile court on behalf of a child born addicted to heroin. The issue presented was whether a finding of abuse may be based entirely upon the prenatal conduct of its mother. The court concluded that such conduct could be the basis for a finding of abuse. The court also found that a mother creates a substantial risk to the health or safety of the child by using heroin regularly during pregnancy.

There is a series of cases holding that when the mother of an unborn child is wrongfully injured and such injury affects the unborn child, such unborn child is a "person" for the purpose of filing a personal injury action seeking damages for prenatal injuries. *Williams* v. *Marion Rapid Transit* (1949), 152 Ohio St. 114, 39 O.O. 433, 87 N.E. 2d 334; *Jasinsky* v. *Potts* (1950), 153 Ohio St. 529, 42 O.O. 9, 92 N.E. 2d 809; *Werling* v. *Sandy* (1985), 17 Ohio St. 3d 45, 17 OBR 37, 476 N.E. 2d 1053.

In conclusion, it is my opinion that the decision of subject juvenile judge to take jurisdiction over relator because of her use of drugs during subject pregnancy complied with R.C. 2151.011(B)(1).