OPINION OF THE COURT
David Freundlich, J.
The motion dated May 7, 1998, brought by petitioner, Legal Aid Society of Suffolk County, on behalf of the unborn child, pursuant to CPLR 3212, seeking an order granting summary judgment on the issue that the unborn child is neglected pursuant to Family Court Act § 1012, is granted. The cross petition dated May-27, 1998, brought by respondent, Sierra K., pursuant to CPLR 3211 (a) (7), seeking an order dismissing the petition, is denied.
Petitioner alleges respondent, Sierra K., is neglectful of her unborn child by nature of her continued drug use and failure to enroll in and to complete a rehabilitation program, in violation of the order of this court entered July 14, 1997, relative to a prior neglect proceeding. Petitioner further alleges a finding of derivative neglect is warranted.
This court, taking judicial notice of all prior pleadings and proceedings, determines that on September 25, 1996, respondent, Sierra K., was found to have permanently neglected her four children resulting in her parental rights to those four children being terminated. Thereafter, on July 3, 1997, respondent gave birth to a fifth child who was born with a positive toxicol *3 ogy for cocaine. As a result of respondent testing positive for crack cocaine on October 28, 1997, and after a hearing pursuant to Family Court Act § 1027, and after respondent’s admission to prenatal drug use, respondent, on February 4, 1998, surrendered this fifth child. Ah order was issued which provided, inter alia, that respondent shall regularly attend and participate in a drug abuse rehabilitation program at a licensed rehabilitation facility; shall attend all sessions prescribed by the treating facility until discharged by the facility, in writing to the Department of Social Services; shall refrain from the use or possession of any illegal or nonprescribed illegal substance, narcotics; shall regularly attend and participate in a parent effectiveness training program; shall attend all programs and sessions prescribed by the program until satisfactorily discharged by the program, in writing to the Department of Social Services; said order having been entered July 14, 1997. To date, respondent has not complied with the terms and conditions of this order. Respondent is now pregnant with her sixth child and is due to deliver in June or July 1998, and has admitted to Child Protective Services (CPS) that she has used drugs during this pregnancy. She had also tested positive for crack cocaine on October 28, 1997, during the pendency of this current pregnancy. Legal Aid now seeks an order granting summary judgment on the issue that this sixth, but unborn, child is derivatively neglected based upon the foregoing and that respondent is in violation of the previous order of July 14, 1997.
Respondent argues that the previous order which required drug abstinence and drug treatment was previously vacated; that there is no per se rule that the child of a parent who abuses one sibling is automatically a derivatively abused or neglected child; and that neither the United States nor New York Constitution confers legal personality for the unborn.
Respondent does not dispute that she had a positive screen for crack cocaine on October 28, 1997 or that she admitted to the CPS caseworker in January 1998 (prior to surrendering her last born child) that she has been using drugs during this pregnancy. Respondent asserts that she is “presently drug free and in treatment”, and that she has made a “true and positive metamorphosis in my life and during this pregnancy.” Respondent has not completed any parenting program, has not successfully completed any drug rehabilitation program and was using crack cocaine as recently as five months ago.
The focus of any inquiry to determine whether derivative neglect is present is whether the evidence of abuse or neglect of *4 one child indicates a fundamental defect in the parent’s understanding of the duties of parenthood (Matter of Rasheda S., 183 AD2d 770; Matter of Lynelle W., 177 AD2d 1008). Such flawed notions of parental responsibility are generally reliable indicators that a parent who has abused one child will place his or her other children at substantial risk of harm (Matter of Ely P., 167 AD2d 473). Based upon respondent’s past conduct prior to and during this pregnancy, there can be no doubt that respondent has and will continue to place this new child at substantial risk of harm from crack cocaine or other illegal drugs. During respondent’s present pregnancy, there has been an order in effect through April 28,1998, which order precluded respondent from using illegal drugs. Despite the same, and by respondent’s own admissions, respondent engaged in the use of such illegal drugs during this current pregnancy and during the pendency of the court order, prior to it being vacated.
Even though respondent argues that no legal personality has been conferred to the unborn, this court finds otherwise. The Family Court Act, as other statutes, must be read as an integrated whole, such that the various sections of the statute retain congruity with each other (McKinney’s Cons Laws of NY, Book 1, Statutes § 97; Matter of Fusco v Roth, 100 Misc 2d 288, 290). Section 512 (b) of the Family Court Act, concerning paternity petitions, states that “[t]he word ‘child’ refers to a child born out of wedlock”. In Matter of Anne E. S. v Antonios S. (115 Misc 2d 192), the court relied upon this section to deny a motion by the petitioner for an order directing a human leucocyte antigen blood test on the respondent and her unborn child. This denial was based on the court’s reading of Family Court Act § 512. Since the fetus had not been “born” out of wedlock and the word “fetus” appears nowhere in the statute, administration of the blood test would have to wait until after the birth. While ostensibly based on a narrow interpretation of statutory language, such a decision could also be easily justified by concern for the safety of the fetus and any risk inherent in prenatal blood withdrawal (Matter of Gloria C. v William C., 124 Misc 2d 313 [Fam Ct 1984]). There is, therefore, demonstrated concern and consideration with regard to protecting the unborn child or fetus.
Evidence which supports the legislative intent to protect the fetus can be demonstrated by Family Court Act article 5. In allowing paternity petitions to be filed during pregnancy and before birth (Family Ct Act § 517), the Legislature exhibits a public policy interest in those fetuses whose mothers wish to give birth and have men adjudicated as the fathers.
*5 Furthermore, once an order of filiation has been entered, an order of support is to be made by the court, effective “as of the date of the application for an order of filiation” (Family Ct Act § 545), not as of the date of the child’s birth. Retroactive support is specifically allowed for expenses of the mother in connection with the pregnancy (Family Ct Act § 545). Such expenses would not be allowed but for the concern for the child’s condition before birth.
Protection of the fetus may be found in other areas of the law. A fetus past 24 weeks is afforded legal status and concomitant protection under the Penal Law. Though “person” is defined in Penal Law § 125.05 (1) as a “human being who has been born and is alive”, Penal Law § 125.00 specifically includes as a victim, in the definition of homicide, an unborn child over 24 weeks. The legislative intent here is apparent: if the mother is in the third trimester of pregnancy, acts causing the death of the fetus may be prosecuted as homicide. It would seem that a Legislature, which proscribes killing a (24-week) fetus would not intend to preclude the issuance of an order of protection against a third party to prevent actions which could result in injury or death of a fetus (Matter of Gloria C. v William C., 124 Misc 2d 313, supra).
The Legislature has provided protection for the unborn in the area of property disposition. The Estates, Powers and Trusts Law provides, in EPTL 2-1.3 (a), that:
“ ‘Unless the creator expresses a contrary intention, a disposition of property to persons described in any instrument as the issue, lawful issue, children, descendants, heirs, heirs at law, next of kin, distributees (or by any term of like import) of the creator or of another, includes * * *
“ ‘(2) Children conceived before, but born alive after such disposition becomes effective.’
“Although the child’s property interest is not realized until birth, it is recognized while the child is yet a fetus.” (Matter of Gloria C. v William C., 124 Misc 2d 313, 319-320, supra.)
The New York State Department of Social Services regulations provide for an increased allowance of $50 additional per month for an indigent pregnant woman’s increased needs beginning in the fourth month of pregnancy (18 NYCRR 352.7 [k]). This administrative provision reflects a public policy concern for the developing child. (Matter of Gloria C. v William C., 124 Misc 2d 313, supra.)
Torts is an evolving area of the law which can be seen as expanding protection of the fetus. The courts have moved from *6 the position that no duty is owed to the unborn to allowing recovery for injury to a fetus who is subsequently born damaged or who, after birth, dies due to prenatal injury (Prosser and Keeton, Torts § 55 [5th ed]; Matter of Gloria C. v William C., 124 Misc 2d 313, supra). Recovery has been allowed in New York since 1951 for injury to a (viable) fetus, who may sue for damages after birth. However, in Albala v City of New York (54 NY2d 269), the Court held no cause of action lies for a preconception tort (perforation of the uterus) resulting in injury to a subsequently conceived fetus. The Court of Appeals thus distinguished Woods v Lancet (303 NY 349): “ Tn that case at the time the tort is committed there are two identifiable beings within the zone of danger each of whom is owed a duty independent of the other and each of whom may be directly injured.’ ” (Albala v City of New York, 54 NY2d 269, 272; Matter of Gloria C. v William C., 124 Misc 2d 313.) Holding that no wrongful death cause of action lies when a child is stillborn, the Court said, “The Woods decision * * * simply brought the common law of this State into accord with the demand of natural justice which requires recognition of the legal right of every human being to begin life unimpaired by physical or mental defects resulting from the negligence of another.” (Endresz v Friedberg, 24 NY2d 478, 483; Matter of Gloria C. v William C., 124 Misc 2d 313, supra)
Legal protection of the fetus was expanded by the Appellate Division, Second Department, in Hughson v St. Francis Hosp. (92 AD2d 131 [1983]). Pursuant to Public Health Law § 2805-d (1) (a statute concerning the duty imposed as to informed consent) the Appellate Division construed a patient in this statute to include a fetus. “This Appellate Division holding that the doctor owes two duties of informed consent, one to the mother and one to the fetus, was based on social and medical reality. The social reality is that a mother who wishes to bear a child generally intends to ensure its health; the medical reality is that a fetus can be adversely affected by something that might be harmless or even beneficial to the mother. It should be noted that while the cause of action does not accrue until the child is born, the time of the injury is nowhere limited in the Hughson decision to a Viable’ fetus as it was in Woods v Lancet (supra)” (Matter of Gloria C. v William C., 124 Misc 2d 313, 321, supra). Of course, the fetus cannot give its informed consent, but this posed no problem for the Court because, like any child incapable of giving legal consent for medical treatment, consent may be given by the parent on its behalf.
*7 Since the common law of this State protects the fetus from negligent acts of a third party, then surely it may be found to encompass protection of the fetus from intentional acts by its mother, which acts could cause the child to begin life in an impaired condition.
Protection of the fetus, as well as protection of the pregnant woman’s health, has been definitively recognized as a legitimate State interest since Roe v Wade (410 US 113, 162). “ “We repeat, however, that the State does have an important and legitimate interest in preserving and protecting the health of the pregnant woman * * * and that it has * * * another important and legitimate interest in protecting the potentiality of human life’ ” (Matter of Gloria C. v William C., 124 Misc 2d 313, 322, supra, quoting Roe v Wade, supra, at 162).
Protection of the fetus, when the mother’s constitutional privacy right is not involved, is not precluded and is in fact a recognized legitimate State interest. In the instant matter, there is no maternal right to privacy involved as it concerns the use of illegal drugs. New York State legislation, regulations and case law manifest this State’s interest in protecting potential life. Accordingly, an order of protection on behalf of a fetus, in an appropriate case, is within the Family Court’s statutory jurisdiction under Family Court Act article 8, and consistent with the statutory purpose (Matter of Gloria C. v William C., 124 Misc 2d 313, supra).
Public policy behind family offense legislation requires expeditious judicial action to prevent injury whenever possible. (Matter of Gloria C. v William C., 124 Misc 2d 313, supra.)
The Court of Appeals of the State of Wisconsin, in State ex rel. Angela M.W. v Kruzicki (197 Wis 2d 532, 541 NW2d 482, revd on other grounds 209 Wis 2d 112, 561 NW2d 729 [legislative acquiescence could not be properly applied]), held that a viable fetus is a “child” within the meaning of the juvenile code in a pending “child in need of protection or services” proceeding, and thus upheld as constitutional an order for the protective custody of a viable fetus which, by necessity, required the custody of the mother as well. The mother was using cocaine or other drugs during her pregnancy and refused voluntary in-patient treatment. The court stated that the mother’s constitutional rights to due process of law and equal protection under the United States Constitution and the Wisconsin Constitution were not violated by detaining her in custody in order to protect and ensure the welfare of the fetus. The court also stated (197 Wis 2d, at 548-549, 541 NW2d, at *8 488) that “We properly bear in mind that the legislature cannot be reasonably expected to address every scenario under which its law might be applied. ‘[T]he very nature of today’s society makes it impossible for the members of the legislature to forecast the particular condition or set of facts to which someone now suggests applying the statute,’ State v. Knutson, Inc., 196 Wis.2d 86, 97, 537 N.W.2d 420, 423 (Ct.App.1995) (quoted source omitted). When our supreme court spoke to the topic of fetal injury in Puhl v. Milwaukee Auto. Ins. Co., 8 Wisc.2d 343, 357, 99 N.W.2d 163, 171 (1959), overruled on other grounds by Stromsted v. St. Michael Hosp., 99 Wis.2d 136, 299 N.W.2d 226 (1980), it stated, ‘If the common law has any vitality * * * it should be elastic enough to adapt itself to current medical and scientific truths so as to function as an efficient rule of conduct in our modern, complex society.’ ”
In the case at bar, it would be incongruous to imagine the Family Court Act’s clear purpose being anything other than to protect children, including unborn children, from harm. Making a child endure an unsafe environment in the womb is ludicrous when this same child is afforded protection from illegal drugs and an unsafe environment the moment it takes its first breath outside the womb.
A finding of derivative neglect and an order precluding the respondent from using illegal drugs is the least restrictive manner of precluding illegal and injurious drugs from entering the infant’s bloodstream and causing injury or adverse effect on the infant. It is inconceivable that the Legislature would intend a fetus to have property rights and causes of action sounding in tort, but not be protected against threats to its safety or life, from its own mother, while in útero.
In In re A.C. (533 A2d 611 [DC App]), the District of Columbia Court of Appeals held that a mother’s penumbral privacy right against bodily intrusion was properly subordinated to the interests of the unborn child and State. A fetal protection policy was found to be reasonably necessary to industrial safety in International Union, United Auto., Aerospace & Agric. Implement Workers (886 F2d 871, revd on other grounds 499 US 187), in that the employer did not establish that sex was a bona fide occupational qualification and the policy was facially discriminatory.
In Parks v Harden (504 F2d 861), the United States District Court for the Northern District of Mississippi at Aberdeen held that unborn children are eligible individuals under the Social Security Act, and the States’ denial of Aid to Families with De *9 pendent Children benefits to expectant mothers strictly on the basis of the fetal status of their children contravenes the Act and is violative of the Supremacy Clause.
The United States District Court, in United States v Denoncourt (751 F Supp 168), held that in sentencing defendant who was in her third trimester of pregnancy, the rights and interests of the unborn baby should be considered along with those of his or her mother. The court noted that under the Hawaii Legislature Conference Committee Reports, defendant’s unborn child is vested with “ ‘all rights of human beings’ ” (at 171). Accordingly, the court concluded that while Miss Denoncourt deserves imprisonment, the court did not feel that prison was a suitable or desirable setting for her unborn baby. In considering the interests and rights of her unborn baby, the court sentenced defendant at the low end of the guideline range and imposed a sentence of one year of probation. Because of the court’s concern that defendant, who had a previous history of drug abuse and prostitution, might revert to the same, and because the court had concern for adequate medical treatment for defendant and her unborn baby, defendant was placed at a half-way house for a period of six months on 24-hour restriction.
The Illinois feticide statute, which precluded intentional homicide of an unborn child without the mother’s consent, was found not to violate either the Equal Protection or Due Process Clauses of the Federal Constitution. The court held that enactment of a criminal statute for intentional homicide of an unborn child was a valid exercise of State legislative power (United States v Ahitow, 888 F Supp 909, revd on other grounds 104 F3d 926). Once again, the safety and welfare of the unborn fetus are being protected, which illustrates that unborn children are vested with rights of a child already born concerning this issue, as well as other issues.
It is evident that the Legislature, as well as other courts and other jurisdictions, demonstrate intent to protect the unborn, not only with regard to property rights and tort concerns, but with regard to the safety, physical integrity, and over-all well-being of the unborn child. It does not follow with any logical certainty that the unborn child should not be protected from the dangers associated with drug use and abusé by its mother when, within moments of gasping its first breath, that same infant will be accorded every necessary protection from a mother who uses illegal drugs. It defies logical reasoning that our laws and society would preclude a mother from illegally
*10 introducing narcotics and other illegal drugs into her child, and yet not protect the unborn child from those same dangers while the child is still in the womb.
It is' adjudged that the unborn child of respondent, Sierra K., is a personality which is afforded the protection of Family Court Act article 10. It is further adjudged that a preponderance of the evidence has established a finding of derivative neglect by respondent as to her unborn fetus. It is ordered that this matter is set down for a dispositional hearing on June 23, 1998 at 11:00 a.m.