The PEOPLE of the State of Colorado, In the Interest of H., an unborn Child, Upon the Petition of the Fremont County Department of Human Services, Petitioner–Appellant,

and Concerning A.H., Respondent–Appellee.

No. 02CA1505.

Colorado Court of Appeals, Div. III.

May 22, 2003.

Certiorari Denied Aug. 4, 2003.

Rocco F. Meconi, P.C., Rocco F. Meconi, Joanna K. Smith, Canon City, Colorado, for Petitioner–Appellant.

Priscilla J. Gartner, Pueblo, Colorado, for Respondent–Appellee.

Opinion by Judge ROY.

In this dependency and neglect proceeding concerning A.H. (mother) and her then unborn child, the county appeals a court order dismissing the petition for lack of subject matter jurisdiction. We affirm.

On April 5, 2002, the county filed a petition in dependency and neglect concerning "Unborn Baby Boy H.," whose due date was alleged to be July 27, 2002. The petition further alleged that the child "resided" with mother and that the child was dependent or neglected as a result of mother's methamphetamine use. On June 3, 2002, mother filed a motion to dismiss for lack of jurisdiction, alleging that the unborn child was not a child within the meaning of § 19–1–103(18), C.R.S.2002. After hearing argument, the trial court granted the motion.

■ At the outset, the parties agree that this case is not moot, although mother has given birth to the child and the relief sought, if granted, would have no practical legal effect. Two exceptions to mootness are that the matter is capable of repetition yet evading review and that the case involves a matter of great importance or recurring constitutional violation. *See Carney v. Civil Service Comm'n,* 30 P.3d 861 (Colo.App.2001). We agree that both exceptions apply to this case.

The Colorado Children's Code (Code) vests exclusive original jurisdiction in the "juvenile court" over proceedings "[c]oncerning any child who is neglected or dependent, as set forth in section 19–3–102." Sections 19–1–103(70), 19–1–104(1)(b), C.R.S.2002. Unless the context of the Code requires otherwise, a "child" is "a person under eighteen years of age." Sections 19–1–103(18), C.R.S.2002. The Code does not define "person," and the general definition is not of any assistance. *See* § 2–4–401(8), C.R.S.2002.

■ The court must give effect to the intent of the legislature and adopt the construction that best effectuates the purposes of the statutory scheme. *M.S. v. People,* 812 P.2d 632 (Colo.1991). To determine intent, a court should look first to the language of the statute and give the words their ordinary meaning. *Catholic Charities & Community Services in Interest of C.C.G.,* 942 P.2d 1380 (Colo.App.1997). Statutes are presumed to be written "in plain, nontechnical language and in a clear and coherent manner using words with common and everyday meaning which are understandable to the average reader." Section 2–2–801, C.R.S.2002. A court also must presume that the legislature intended a just and reasonable result and avoid a statutory interpretation which leads to absurd results. *People in Interest of A.R.M.,* 832 P.2d 1093 (Colo.App.1992). When a statute is amended, an intent to change the law is generally presumed. *In re Fort Lupton Park & Recreation District,* 800 P.2d 1324 (Colo.App.1990).

■ Our research indicates that the earliest relevant statute defined a dependent or neglected child as "any child under 16 years of age" meeting certain additional criteria. Colo. Sess. Laws 1907, ch. 168, § 1 at 361.

The definition was amended in 1923 to read "any child under the age of eighteen years" meeting certain additional criteria, and the statute then further stated that "[t]he laws of this State concerning dependent or neglected children or persons who cause, encourage or contribute thereto, shall be construed to include all children under the age mentioned herein *from the time of their conception and during the months before birth.*" Colo. Sess. Laws 1923, ch. 77, § 1 at 204–05 (emphasis added). In 1967, the General Assembly repealed the prior statutes dealing with dependent and neglected children and then reenacted them, with amendments, as the Code and defined "child" as simply a person "under the age of eighteen years of age," unless the context otherwise requires. Colo. Sess. Laws 1967, ch. 443, § 22–1–3(3) at 994.

We conclude that by amending the applicable definition in 1967 to remove any reference to an unborn child, the General Assembly intended to change the law. *See In re Fort Lupton Park & Recreation District, supra.* Following that amendment, the statute applies only to a child after birth.

Contrary to the county's argument, *Metzger v. People,* 98 Colo. 133, 53 P.2d 1189 (1936), and *People v. Estergard,* 169 Colo. 445, 457 P.2d 698 (1969), do not, in our view, require a different conclusion.

In *Metzger v. People, supra,* the county instituted an action against an unborn child's father for refusing to provide support for the mother. The defendant challenged the jurisdiction of the court on the grounds that the statute was unconstitutional under article V, section 21 of the Colorado Constitution, which requires that all legislation, except appropriations, have a title that embraces the content.

The supreme court concluded that the statute was constitutional and, applying the 1923 definition of "child," further concluded that the courts had jurisdiction immediately upon conception. The court stated:

> No violence is done to the orderly process of the rational mind by letting the word "child" include a human being immediately upon conception and during the period of pregnancy, as well as one actually born.

It is no longer doubted that the months of prenatal existence are tremendously important ones from the standpoint of human welfare. The physical and mental conditions surrounding the expectant mother are vital factors in the unfolding life of the child itself. Her lack of adequate nourishment and shelter, her bodily discomforts and hardships, the worries of mind usually accompanying the tragic situation which confronts us in such a case as this, are a proper basis for compelling the father of the unborn child to remove at least some of the disadvantages in these conditions. He has brought them upon the woman and thereby jeopardized the health and safety of his offspring as a future citizen of the community.

*Metzger v. People, supra,* 98 Colo. at 137–38, 53 P.2d at 1191.

The *Metzger* court recognized the importance of proper prenatal care for the welfare of both the mother and the unborn child, and the county places some reliance on the quoted language. However, *Metzger* is easily distinguished because that case dealt with the 1923 version of the statute, which specifically included unborn children in the definition of dependent and neglected children.

In *People v. Estergard, supra,* the People brought a paternity proceeding under the Code to obtain child support, alleging that the defendant was the father of an unborn child. The defendant challenged the court's jurisdiction over the parent of an unborn child under the 1967 amendment. The court, relying on the introductory language in the definitional section permitting consideration of the context of the statute, concluded that, for paternity purposes, the court had jurisdiction prior to birth.

The context was the Vital Statistics Act, Colo. Sess. Laws 1967, ch. 445 at 1056, which was enacted during the same session as the Code, and which required birth certificates to be filed within seven days of birth. That act further provided that if the mother was not married at the time of birth or conception, the name of the father "shall be entered if, but only if, the mother and the person to be named as the father so request in writing *or if paternity has been determined by a court*

*of competent jurisdiction."* Colo. Sess. Laws 1967, ch. 445, § 66–8–12(3) at 1060 (emphasis added). The court reasoned that paternity could not be litigated within seven days of birth, and, therefore, the legislature must have contemplated that paternity actions could be brought prior to birth.

We conclude that, because the court in *People v. Estergard* considered materials outside the definition and the Code for context, the opinion must be read narrowly. We are not aware of any comparable context that would permit or dictate the expansion of the definition of "child" for dependency and neglect proceedings to include an unborn child.

The purpose of a dependency and neglect proceeding is to establish the basis for ongoing state intervention when a child lacks the benefit of parental guidance, concern, protection, or support. *L.L. v. People,* 10 P.3d 1271 (Colo.2000); *L.G. v. People,* 890 P.2d 647 (Colo.1995); *People in Interest of O.E.P.,* 654 P.2d 312 (Colo.1982). The remedies expressly provided for in the Code support our conclusion that such proceedings are not intended to protect the unborn child. The petition in dependency and neglect proceeding must set forth the name, age, and residence of the child. *See* § 19–3–502(2), C.R.S. 2002. The dispositional provisions that, inter alia, provide for placement of the child apart from the parents, would indicate that such proceedings do not include the unborn child. *See* § 19–3–508, C.R.S.2002. There are no remedies in the Code appropriate to an unborn child or designed to restrict the conduct of a pregnant woman. Indeed, at oral argument, the county stated that after the court orders the mother to abstain from taking illegal drugs or engaging in other harmful activity, only the general remedy of contempt is available.

In contrast, several state courts have construed the word "child" to include an unborn child in dependency and neglect proceedings premised on the parent's prenatal conduct. However, in each instance, the proceedings were commenced following the birth of the child. *See In re Baby X,* 97 Mich.App. 111, 293 N.W.2d 736 (1980); *In re Smith,* 128 Misc.2d 976, 492 N.Y.S.2d 331 (N.Y.Fam.Ct. 1985); *In re Baby Boy Blackshear,* 90 Ohio St.3d 197, 736 N.E.2d 462 (2000); *In re Ruiz,*

27 Ohio Misc.2d 31, 500 N.E.2d 935 (Ct.Com. Pl.1986); *In re U.P.*, 105 S.W.3d 222, 2003 WL 1901277 (Tex.App. No. 14–02–00126–CV, Apr. 17, 2003).

However, where, as here, the controlling statute does not specifically include the unborn child within its protection and the proceeding was commenced prior to the child's birth, most state courts have found jurisdiction lacking. *See In re Pima County Juvenile Severance Action No. S–120171*, 183 Ariz. 546, 905 P.2d 555 (Ariz.Ct.App.1995); *Arkansas Dep't of Human Services v. Collier*, 351 Ark. 506, 95 S.W.3d 772 (2003); *In re Steven S.*, 126 Cal.App.3d 23, 178 Cal. Rptr. 525 (1981); *In re Dittrick Infant*, 80 Mich.App. 219, 263 N.W.2d 37 (1977); *Cox v. Court of Common Pleas*, 42 Ohio App.3d 171, 537 N.E.2d 721 (1988); *State v. Kruzicki*, 209 Wis.2d 112, 561 N.W.2d 729 (1997). *Contra In re Unborn Child*, 179 Misc.2d 1, 683 N.Y.S.2d 366 (N.Y.Fam.Ct.1998).

Finally, nothing in *Espadero v. Feld*, 649 F.Supp. 1480 (D.Colo.1986), or *Pizza Hut of America, Inc. v. Keefe*, 900 P.2d 97 (Colo. 1995), requires an unborn child to be included in the definition of "child" in the context of a dependency and neglect proceeding. Those cases hold that "person" within the meaning of the wrongful death statutes includes a viable fetus. Thus, *Espadero* and *Pizza Hut* are inapposite here. *See Cox v. Court of Common Pleas, supra; State v. Kruzicki, supra.*

Having so concluded, we need not address mother's argument that an intrusion by the state prior to birth violated her right to privacy. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

The order is affirmed.

Chief Judge DAVIDSON and Judge WEBB concur.

---

\* Justice KOULIS would grant the petition as to the following issue: